### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Patrick L. Kelly, being sworn, state:

### Introduction and Agent Background

1.     I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I am also an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2.     I have been employed as a Special Agent with the DEA since May 2004 and am currently assigned to the New England Field Division, Worcester Tactical Diversion Squad ("TDS") in Worcester, Massachusetts.  From 2004 to 2017, I was assigned to the Los Angeles Field Division.  In October 2017, I was assigned to the DEA New England Field Division.  My primary duties at the DEA include the investigation of drug trafficking organizations ("DTOs").

3.     During my career in law enforcement, I have received training and gained experience related to a variety of criminal activities.  In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug trafficking conspiracies. I have participated in all aspects of drug investigations, including Title III wiretaps, physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations.  I have also reviewed recorded conversations and telephone, financial, and drug records.  Through

my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4. As a result of my training and experience, I am familiar with the methods, routines, and practices of individuals involved in the use, sale and trafficking of narcotics. I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver, and dispense, import and export, and use controlled substances such as methamphetamine, fentanyl, heroin, cocaine, marijuana, prescription medications, and others. I have debriefed numerous defendants, informants, and witnesses who have personal knowledge about drug activities and the operation of drug trafficking organizations. I have sworn out numerous affidavits in support of search warrants, arrest warrants, and other Court applications.

5. Based on my training and experience, I am familiar with the manner in which drug traffickers use telephones, coded or slang-filled telephone conversations, text messages, and other means to facilitate their illegal activities.

6. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers and money launderers operating at the local, state, national, and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers and money launderers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute drugs and the proceeds of drug trafficking. I am familiar with

the manner in which drug traffickers and money launderers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses."

7.      I am currently participating in the investigation of the Jack SAEZ, Jr. drug trafficking organization (hereinafter, the "SAEZ DTO").  This criminal organization distributes cocaine, methamphetamine, and other narcotics to retail customers and to other drug dealers.  This investigation of the SAEZ DTO is being conducted by DEA agents and Task Force Officers, United States Postal Inspection Service ("USPIS") inspectors, and officers from state and local law enforcement agencies.

8.      I have participated in this investigation since October 2024.  I am familiar with the facts and circumstances of this investigation through my participation in the investigation and from oral and written reports made to me by other members of the DEA and other federal, state, and local law enforcement agencies.  I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information (whether received directly or indirectly) that I believe to be reliable from numerous sources including, but not limited to, the following:

(1)      My training and experience investigating drug-trafficking organizations;

(2)      Oral reports, written reports, and documents that I have received from other federal, state, and local law enforcement agents;

(3)      Physical and electronic surveillance conducted by me and other federal, state, and local law enforcement officers;

(4)      Confidential sources of information;

(5)      Public and business records;

(6)      Telephone toll records, pen register and trap and trace information, and telephone subscriber information;

(7)      GPS tracking device data;

(8)     Drug and money seizures;

(9)     Queries of law enforcement records and intelligence databases; and

(10)    Evidence obtained from judicially-authorized intercepted communications under Title III over multiple telephones used by the targets of this investigation.

## Purpose of the Affidavit

9.      I submit this affidavit in support of a criminal complaint charging that from in or about October 2024 through present, the following individuals (collectively, the "Target Subjects"):

(1)     Jack SAEZ, Jr. (hereinafter, "SAEZ");
(2)     Christopher RIVERA RODRIGUEZ (hereinafter, "RIVERA RODRIGUEZ");
(3)     Jan Carlos MARTINEZ MENDEZ (hereinafter, "MARTINEZ MENDEZ");
(4)     Dayanara MENDEZ (hereinafter, "MENDEZ");
(5)     Shaquille De Jesus TORRES (hereinafter, "TORRES");
(6)     
(7)     Sheldon HERRING (hereinafter, "HERRING");
(8)     Duamel OCASIO (hereinafter, "OCASIO");
(9)     Stephen BANDILLA, III (hereinafter, "BANDILLA");
(10)    Justin GILCHREST (hereinafter, "GILCHREST");
(11)    
(12)    Ushuaniliz HERNANDEZ RIOS (hereinafter, "HERNANDEZ RIOS");

conspired with each other and others known and unknown to knowingly and intentionally possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846 (the "Charged Offense").

10.     This affidavit does not set forth all the facts developed during this investigation. Rather, it sets forth only those facts that I believe are necessary and sufficient to establish probable cause to believe that the Target Subjects have committed the Charged Offense.

4

**Probable Cause**

Background of Investigation

11.      This investigation began on October 26, 2024, when an individual known to law enforcement ("Individual 1") unexpectedly received a package in Southbridge, Massachusetts from Puerto Rico.  Individual 1 turned over the package to Southbridge Police Department, who subsequently turned over the package to DEA.  DEA then determined that the package contained cocaine.  After the delivery of this package, Individual 1 reported that two people repeatedly harassed Individual 1 about the whereabouts of the package.

12.      After these events, investigators began to track packages shipped from Puerto Rico to Worcester County in Massachusetts that were suspected of containing narcotics.  As further described below, between October 2024 and October 2025, investigators seized approximately 4 kilograms of cocaine and identified various members of the SAEZ DTO, as well as the addresses and the phone numbers used by the SAEZ DTO.

13.      In October 2025, investigators began to intercept communications over some of those phone numbers.  Between October 2025 and March 2026, investigators used those intercepted communications to identify members, customers, and suppliers of the SAEZ DTO, to make additional seizures of packages of cocaine, and to confirm that the SAEZ DTO was also distributing methamphetamine and fentanyl.

14.      Throughout this investigation, investigators used a combination of subscriber information, precise location information and cell-site simulator information obtained through search warrants, interceptions of wire and electronic communications obtained through court order, and physical surveillance to identify the members of the SAEZ DTO, including the Target Subjects, and their roles.  In total, between October 2024 and April 2, 2026, investigators seized

over 10 kilograms of cocaine or suspected cocaine mailed by and on behalf of the Target Subjects and the SAEZ DTO.

15.    In Part A of this affidavit, I describe the investigation prior to the interception of the wire and electronic communications of the Target Subjects.  In Part B, I describe the investigation during the interception of the communications of the Target Subjects.  And in Part C, I describe the role of each Target Subject, each of which is sufficient to find probable cause that each Target Subject committed the Charged Offense.

### A.  The Pre-Wiretap Investigation

#### a.  The Identification of SAEZ

16.    In November 2024, after DEA had received the cocaine package that was delivered to Individual 1, investigators began tracking packages suspected of containing narcotics that were shipped from Puerto Rico to various addresses in Worcester County, Massachusetts.  Investigators looked for packages that had a combination of characteristics, which, when found in combination, have shown a high probability that the packages will contain drugs or proceeds of drug sales, including (1) mailed from or addressed to a known narcotic source city, (2) fictitious return and/or sender address or name; (3) handwritten address information; (4) absence of a business account number, indicating the sender paid cash; (5) addressed from an individual to another individual; and (6) heavily taped.

17.    On February 24, 2025, investigators identified one such package.  The suspected drug package bore US Postal Package Tracking # 9505 5130 3667 5053 9377 41 and was inbound from Puerto Rico to 40 Pleasant Street, Webster, Massachusetts (the "First 40 Pleasant Street Package").  USPS business records showed that the following IP addresses were used to query the status of this package:

6

73.253.10.52 (Comcast Cable)
2601:19e:4380:5d3 0:643c:1508:7dc1:dcc3 (Comcast Cable)

18.    Comcast records identified the subscriber name of both IP addresses as "Dayanara Mendez" (MENDEZ), the subscriber phone number as (774)-251-7671 (the "MENDEZ-7671 Phone"), and the billing address as 148 Ballouville Road, Dayville, Connecticut.

19.    On March 12, 2025, through surveillance and open-source data query, investigators learned that SAEZ and MENDEZ lived at 148 Ballouville Road. Further, toll records showed that one of the top contacts of the MENDEZ-7671 Phone was (860) 455-8302 ("Target Telephone 1").[1] Verizon records identified the subscriber name of Target Telephone 1 as "Dayanara Mendez" with the address 148 Ballouville Road, Dayville, Connecticut. A search on the Clear[2] database linked Target Telephone 1 to SAEZ through publicly accessible historical phone database records. An open-source query of Target Telephone 1 also showed a WhatsApp account with a photo of SAEZ, and a Cash App account under the name "Nuni Saez" with username "jdmnuni." On September 2, 2025, the Honorable David H. Hennessy, United States Magistrate Judge for the District of Massachusetts, issued a warrant authorizing the use of a cell-site simulator to identify the user of Target Telephone 1. Investigators using the cell-site simulator in combination with physical surveillance further identified the user of Target Telephone 1 as SAEZ. Subsequent wire communications confirmed that SAEZ is the user of Target Telephone 1.

---

[1] In this affidavit, the phone numbers whose communications were intercepted at any point during this investigation are referred to as the "Target Telephones."

[2] Clear is an investigative platform that searches proprietary sources and public records to obtain information on individuals and businesses.

20.     As described below, between April 2025 and September 2025, SAEZ and other Target Subjects coordinated and/or participated in the shipment, delivery, receipt, storage, and distribution of numerous packages of cocaine and packages suspected to contain cocaine.

**b. On April 1, 2025, SAEZ Coordinated the Delivery and Receipt of Suspected Drug Packages with Other Target Subjects, including OCASIO, RIVERA RODRIGUEZ, GILCHREST, MENDEZ and MARTINEZ MENDEZ**

21.     On March 29, 2025, investigators identified four packages sent from Puerto Rico to various addresses in Worcester County, Massachusetts, including 3 Draper Street, 19 Auburn Street, and 69 Outlook Drive, all in Worcester, Massachusetts; and 3 Richard Avenue, in Webster, Massachusetts, which investigators suspected of containing narcotics based on identification of at least some of the factors described above.  Investigators conducted surveillance of the delivery of these packages and identified certain Target Subjects.  The four packages were identified as follows:

    a.  The First 3 Draper Street Package.  USPS Priority Mail (Tracking # 9505 5114 5581 5088 8407 89), mailed on March 29, 2025, weighing[3] 9 lbs., 12.2 ounces, addressed to Nicole Rivera, 3 Draper Street, Apartment 1, Worcester, MA 01604, with sender information Eduardo R., Calle 5 D25 Mameyal, Dorado, Puerto Rico 00646.  Based on public records, the listed addressee is fictitious, and no known individual named "Nicole Rivera" is associated with 3 Draper Street, Apartment 1, Worcester, Massachusetts.  I refer to this package as the "First 3 Draper Street Package."

    b.  The First 19 Auburn Street Package.  USPS Priority Mail (Tracking # 9505 5114 5582 5087 6665 32), mailed on March 28, 2025, weighing 10 lbs., 1.4 ounces, addressed to Carlos Rivera, 19 Auburn Street, Worcester, MA 01605, with sender information Juan Rivera, 717 Calle del Parque, San Juan, Puerto Rico 00909.  An individual named "Carlos Rivera" is associated with 19 Auburn Street, Worcester, Massachusetts.  I refer to this package as the "First 19 Auburn Street Package."

    c.  The First 3 Richard Avenue Package.  USPS Priority Mail (Tracking # 9505 5103 3667 5088 9496 34), mailed March 29, 2025, weighing 10 lbs., addressed

---

[3] All weights of suspected drugs parcels are approximate and were obtained through USPS business records.

to Jay Perry, 3 Richard Avenue, Webster, MA 01570, with sender information Angel Perry R., 717 Calle del Parque, San Juan, Puerto Rico 00909. Based on public records, the listed recipient is fictitious, and no known individual named "Jay Perry" is associated with 3 Richard Avenue, Webster, Massachusetts. I refer to this package as the "3 First Richard Avenue Package."

d. The First 69 Outlook Drive Package. USPS Priority Mail (Tracking # 9505 5103 3668 5087 9536 86), mailed March 28, 2025, weighing 10 lbs., addressed to Santa Torres, 69 Outlook Drive, Apartment 14, Worcester, MA 01602, with sender information Luis Torres, Calle 5 D25 Mameyal, Dorado, Puerto Rico, 00646. An individual named "Santa Torres" is associated with 69 Outlook Drive, Apartment 14, Worcester, Massachusetts. I refer to this package as the "First 69 Outlook Driver Package."

22.    Based on my training and experience, the fact that each of these packages originated in Puerto Rico, had a fictitious return address, handwritten sender and addressee information which appeared to be in the same handwriting, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe that each of these packages contained narcotics.

i.    The First 19 Auburn Street Package

23.    Investigators learned that the package addressed to 19 Auburn Street was mailed from the Toa Baja, Puerto Rico Post Office at approximately 12:42 p.m. Investigators reviewed surveillance footage at the post office and identified the individual who shipped the package ("Subject 1"). Subject 1's public Instagram account showed a photo of Subject 1 and two Target Subjects, MARTINEZ MENDEZ and RIVERA RODRIGUEZ.

24.    On April 1, 2025, at approximately 7:50 a.m., SAEZ used Target Telephone 1 to call OCASIO at (603) 556-2153 ("Target Telephone 4")[4] for five seconds.

---

[4] T-Mobile records list the subscriber of this phone number as "Jose Rodriguez," with billing address 11 Prospect Street, Worcester, Massachusetts. The Clear database links OCASIO to this phone number through publicly accessible historical phone database records. An open-source query of the phone number revealed a Cash App account under the name "Duamel," OCASIO's first name, with username "Duamell23," and a photograph of a Hispanic male with a beard which resembled the man who received the suspected drug package at 19 Auburn Street on April 1, 2025. Wire communications confirmed that OCASIO is the user of Target Telephone 4.

25.     Shortly thereafter, at approximately 8:30 a.m., investigators set up surveillance on 19 Auburn Street in anticipation of the delivery of the suspected drug package.  At approximately 9:26 a.m., investigators observed a red 2011 Hyundai Sonata park in the driveway of 19 Auburn Street.  Investigators identified the driver of the vehicle from the Massachusetts Registry of Motor Vehicle ("RMV") photograph as OCASIO.  Commercial database records show that OCASIO lives at 328 Greenwood Street, Worcester, Massachusetts.  I include a photo of OCASIO by his vehicle for reference below:



26.     At approximately 9:40 a.m., investigators observed a USPS carrier deliver the suspected drug package to the rear porch of 19 Auburn Street.  At approximately 9:41 p.m., investigators observed OCASIO and an unknown male exit the Hyundai and retrieve the package and take it into a shed in the backyard of 19 Auburn Street.  Investigators observed OCASIO and the unknown male walk in and out of the shed multiple times before starting a small fire in the backyard which investigators believed to be for the purpose of burning the packaging materials for the suspected narcotics package.  Based on their surveillance, investigators believed the contents of the suspected drug package remained inside the shed at 19 Auburn Street.

27.    Based on experience and training, and on OCASIO's receipt of the suspected drug package in the morning of April 1, 2025, I believe that SAEZ called OCASIO that morning to coordinate the receipt of this suspected drug package.

ii.    The First 3 Draper Street Package

28.    Also on April 1, 2025, investigators set up surveillance to monitor the delivery of the First 3 Draper Street Package.  At approximately 9:09 a.m., investigators observed a USPS carrier deliver the 3 Draper Street Package.  Massachusetts RMV records showed that 3 Draper Street was the residence of RIVERA RODRIGUEZ.  An unknown woman picked up the 3 Draper Street Package and brought it into the residence.

29.    Toll records show that SAEZ, using Target Telephone 1, communicated with RIVERA RODRIGUEZ at (774)-641-2497 (the "RIVERA RODRIGUEZ-2497 Phone")[5] later that day.  Specifically, RIVERA RODRIGUEZ made a call to SAEZ at approximately 6:19 p.m., which lasted 30 seconds.  SAEZ received two additional calls on Target Telephone 1 from the RIVERA RODRIGUEZ-2497 Phone at 8:33 p.m. and 8:36 p.m., which lasted 37 seconds and 52 seconds, respectively.

30.    Based on experience and training, and the earlier delivery of a suspected drug package to 3 Draper Street, RIVERA RODRIGUEZ's residence, I believe RIVERA RODRIGUEZ called SAEZ that evening to confirm the receipt of this suspected drug package.

iii.    The First 3 Richard Avenue Package

31.    Also on April 1, 2025, at approximately 11:30 a.m., investigators set up surveillance to monitor the delivery of the 3 Richard Avenue Package.  At approximately 1:50

---

[5] AT&T records list the subscriber of this phone as "Christopher Rivera Rodriguez," with the listed user address of 3 Draper Street, Apt 1, Worcester, Massachusetts.

11

p.m., investigators observed GILCHREST receive a package from a USPS carrier and bring the package into the residence.

32.     At approximately 1:55 p.m., investigators observed GILCHREST exit 3 Richard Avenue with a black trash bag that appeared to contain the USPS package. Investigators observed GILCHREST bring the black trash bag nearby to 32 Ash Street in Webster, which is approximately 180 feet away from 3 Richard Avenue. At 32 Ash Street, investigators observed GILCHREST place the black trash bag into a 2009 Dodge Ram 1500. The Dodge Ram 1500 is registered to Maribel Saez, whom investigators believe to be SAEZ's mother. Shortly after GILCHREST placed the trash bag in the truck, investigators observed SAEZ exit 32 Ash Street and drive the Dodge Ram 1500 away.

33.     Toll records show that, between 8:02 a.m. and 2:16 p.m. that day, SAEZ used Target Telephone 1 to communicate with GILCHREST at (508) 826-5154 (the "GILCHREST-5154 Phone")[6] a total of 14 times. Based on experience and training, and on GILCHREST's receipt of the suspected drug package at 3 Richard Street, and GILCHREST's subsequent delivery of the suspected drug package to SAEZ, I believe SAEZ communicated with GILCHREST that day to coordinate the receipt and subsequent delivery of this suspected drug package.

### iv.     The First 69 Outlook Drive Package

34.     Also on April 1, 2025, at approximately 12:15 p.m., investigators set up surveillance to monitor the delivery of the 69 Outlook Drive Package. Investigators observed a USPS carrier deliver the 69 Outlook Drive Package at approximately 12:38 p.m. At approximately

---

[6]  TracFone Wireless Inc. records list the subscriber email address as "gilphrestjustin007@gmail.com," with the subscriber address "897 Pearl Street, Gardner, Massachusetts." The Accurint database further linked this phone number to GILCHREST through publicly accessible historical phone database records.

12:43 p.m., investigators observed MENDEZ arrive in a black 2016 Ford Explorer.  MENDEZ left

the area to run errands without interacting with anyone or touching the delivered package.  At

approximately 3:18 p.m., investigators observed MENDEZ return to 69 Outlook Drive and park

in the rear lot of the residence.  At approximately 4:02 p.m., investigators observed MENDEZ

carrying a large beige tote bag on her left shoulder that was filled with an object shaped similarly

to the suspected drug package that was delivered earlier that day.  Below, I include a photo of

MENDEZ carrying that tote:



35.     MENDEZ then drove in her vehicle to 13 Stoneland Road, Worcester,

Massachusetts.  Investigators observed MENDEZ carry the weighted tote bag into the property of

13 Stoneland Road.[7]  At approximately 4:18 p.m., investigators observed MENDEZ walk away

from 13 Stoneland Road empty-handed:

---

[7] Investigators later learned through interceptions and surveillance that the SAEZ DTO was
using the garage building behind 13 Stoneland as a stash location.



36.    Investigators observed that the Dodge Ram 1500 truck that SAEZ was driving earlier that day was also parked at 13 Stoneland Road.  Based on that observation, investigators believe that SAEZ was at 13 Stoneland Road at the time MENDEZ delivered the suspected drug package.  Later that night, MENDEZ's Ford Explorer and SAEZ's Dodge Ram 1500, described above, were both parked at 148 Ballouville Road, Dayville, Connecticut, which is the home of MENDEZ and SAEZ.

### c. In April 2025, SAEZ Coordinated the Distribution and Storage of Suspected Narcotics with other Target Subjects, including MARTINEZ MENDEZ, OCASIO, and RIVERA RODRIGUEZ

#### i.    The Second 19 Auburn Street Package

37.    On April 12, 2025, investigators learned of another suspected drug package inbound from Puerto Rico and addressed to 19 Auburn Street, an address used by the SAEZ DTO to receive suspected narcotics packages, as described above.  This package (hereinafter, the "Second 19 Auburn Street Package") was mailed to the same address as the First 19 Auburn Street Package and contained the typical indicia of packages containing narcotics and was identified as a USPS Priority Mail (Tracking # 9505 5114 5583 5101 8119 23), weighing 9.6 lbs., addressed to

14

Carlos Rivera, 19 Auburn Street, Worcester, Massachusetts, with sender information Juan Rivera, 717 Calle del Parque, San Juan, Puerto Rico 00909. As noted above, an individual named "Carlos Rivera" is associated with 19 Auburn Street. Based on my training and experience, the fact the package originated in Puerto Rico, had a fictitious sender and handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe this Second 19 Auburn Street Package contained narcotics.

38.     The Second 19 Auburn Street Package was mailed from the Toa Baja, Puerto Rico Post Office. Investigators reviewed surveillance footage from the Post Office and identified the shipper of this package as MARTINEZ MENDEZ. Below, I include a still shot of the surveillance footage:



39.     Toll records show that, on April 14, 2025, SAEZ, using Target Telephone 1, and OCASIO, using Target Telephone 4, exchanged a total of four text messages.

40.     The following day, on April 15, 2025, investigators set up surveillance at approximately 8:58 a.m. in anticipation of the delivery of the Second 19 Auburn Street Package. Investigators observed a USPS carrier deliver the suspected drug package at approximately 9:02 a.m. At approximately 9:15 a.m., investigators observed OCASIO park on Auburn Street and approach 19 Auburn Street while talking on his phone. At approximately 9:19 a.m., investigators

15

observed OCASIO pick up the package and open it before bringing the package into the shed on the property.  At approximately 9:29 a.m., investigators observed OCASIO exit the yard empty-handed and walk toward his vehicle.

41.    Based on experience and training and the information above, I believe that MARTINEZ MENDEZ mailed suspected narcotics to the SAEZ DTO, that SAEZ communicated with OCASIO on April 14, 2025, to coordinate the receipt of the suspected drug package; and that OCASIO received suspected narcotics on behalf of the SAEZ DTO.

ii.    The Second 3 Draper Street Package

42.    Also in April 2025, another suspected drug package was mailed to 3 Draper Street, the then-residence of RIVERA RODRIGUEZ.[8]  This package (hereinafter, the "Second 3 Draper Street Package") was mailed to the same address as the First 3 Draper Street package and contained the typical indicia of packages containing narcotics.  It was identified as a USPS Priority Mail (Tracking # 9505 5103 3666 5101 8091 20), weighing 9 lbs., 11.2 ounces, addressed to Jan Rivera, 3 Draper Street, Apartment 1, Worcester, Massachusetts 01604, with sender information Eduardo Rivera, Calle 5 D25 Mameyal, Dorado, Puerto Rico, 00646.  Based on public records, the listed recipient is fictitious and no known individual named "Eduardo Rivera" is associated with 3 Draper Street.  Based on my training and experience, the fact the package originated in Puerto Rico, had a fictitious and handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe the Second 3 Draper Street package contained narcotics.

---

[8] Investigators later learned that RIVERA RODRIGUEZ also maintained a residence in Puerto Rico.

43.     Toll records show that on April 16, 2025, the day before the Second 3 Draper Street Package was delivered, SAEZ, using Target Telephone 1, had four voice contacts with the RIVERA RODRIGUEZ-2497 Phone.

44.     The following day, on April 17, 2025, investigators established surveillance around 3 Draper Street in anticipation of the package delivery.  At approximately 9:17 a.m., investigators observed an unknown individual pick up the package from the mailbox and bring it inside 3 Draper Street.

45.     Based on experience and training and the information above, I believe SAEZ communicated with RIVERA RODRIGUEZ to coordinate the receipt of this suspected narcotics package.

    **d.  In May 2025, SAEZ Coordinated the Distribution and Storage of Cocaine and Suspected Cocaine with Other Target Subjects, including RIVERA RODRIGUEZ, OCASIO, and GILCHREST**

46.     On May 17 and May 18, 2025, investigators learned of three suspected drug packages inbound from Puerto Rico to addresses in Worcester County used by the SAEZ DTO. The three packages, which each contained the typical indicia of packages containing narcotics discussed *supra*, were identified as follows:

    a.  The Third 3 Draper Street Package.  USPS Priority Mail (Tracking # 9505 5104 1578 5136 6702 46), mailed on May 16, 2025, weighing 9.8 lbs., addressed to Jan Rivera, 3 Draper Street, Apartment 1, Worcester, MA 01604, with sender information Eduardo Rivera, Calle 5 D25 Mameyal, Dorado, Puerto Rico 00646.  As noted above in connection with the Second 3 Draper Street Package, the listed recipient is fictitious, and no known individual named "Jan Rivera" is associated with 3 Draper Street, Apartment 1, Worcester, Massachusetts.  I refer to this package as the "Third 3 Draper Street Package."

    b.  The Third 19 Auburn Street Package.  USPS Priority Mail (Tracking # 9505 5114 5584 5137 6213 42), mailed on May 17, 2025, weighing 9.8 lbs., 1.4 ounces, addressed to Carlos Rivera, 19 Auburn Street, Worcester, MA 01605, with sender information Juan Rivera, 717 Calle del Parque, San Juan, Puerto Rico 00909.  As noted above in connection with the First and Second 19 Auburn

17

Street Packages, an individual named "Carlos Rivera" is associated with 19 Auburn Street, Worcester, Massachusetts. I refer to this package as the "Third 19 Auburn Street Package."

c. The Second 3 Richard Avenue Package. USPS Priority Mail (Tracking # 9505 5103 3667 5137 9669 88), mailed on May 17, 2025, weighing 10.5 lbs., addressed to Jay Perry, 3 Richard Avenue, Webster, MA 01570, with sender information Luis G. Perry, Calle 13B-162 Urbel Mameya, Dorado, Puerto Rico 00646. As noted above in connection with the First 3 Richard Avenue Package, the listed recipient is fictitious, and no known individual named "Jay Perry" is associated with 3 Richard Avenue, Webster, Massachusetts. I refer to this package as the "Second 3 Richard Avenue Package."

47.    Based on my training and experience, the fact that each of these packages originated in Puerto Rico, had a fictitious sender and/or addressee name and handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe that each of these packages contained narcotics.

i.    The Third 3 Draper Street Package

48.    The Third 3 Draper Street Package was mailed from the Hato Rey Post Office located at 361 Calle Juan Calaf, San Juan, Puerto Rico. Surveillance footage from the Post Office showed that RIVERA RODRIGUEZ shipped this package. I include a still shot of the surveillance footage for reference below:



18

49.     On May 19, 2025, investigators intercepted the Third 3 Draper Street Package at the United States Post Office located at 4 E Central Street, Worcester, Massachusetts.  On May 20, 2025, Magistrate Judge Hennessy issued a warrant authorizing the search and seizure of the Third 3 Draper Street package.  *See* 25-mj-4278-DHH.

50.     The following day, investigators searched the package and seized two brick-shaped objects wrapped in multiple layers of clear plastic wrap, dryer sheets, carbon paper, and duct tape, with a gross weight of approximately 2,313.1 grams.  When unwrapped, the packaging contained a white powdery substance, which field tested positive for cocaine.  This substance was sent to the DEA laboratory for testing, and the laboratory identified the primary drug as cocaine hydrochloride, with a net weight of 1,996.2 grams.  I include a photo of the Third 3 Draper Street Package (left) and its contents (right) for reference below:

 

51.     Based on my training and experience and the information above, I believe that RIVERA RODRIGUEZ mailed approximately two kilograms of cocaine to and on behalf of the SAEZ DTO.

ii.   The Third 19 Auburn Street Package

52.   On May 20, 2025, between 7:49 a.m. and 1:14 p.m., the OCASIO, using Target Telephone 4, was in voice and text contact with SAEZ's second phone number, (646) 662-4904 ("Target Telephone 2")[9] a total of 10 times.

53.   On May 20, 2025, at approximately 8:43 a.m., investigators set up surveillance at 19 Auburn Street in anticipation of the delivery of the Third 19 Auburn Street Package. Investigators observed OCASIO in his red Hyundai Sonata parked on the street in front of 19 Auburn Street.   At 9:13 a.m., SAEZ, using Target Telephone 2, called OCASIO, at Target Telephone 4, and the call lasted 28 minutes and 52 seconds.

54.   At approximately 9:25 a.m., while OCASIO and SAEZ were on that call, OCASIO exited his vehicle and retrieved the suspected drug package from the USPS carrier.  OCASIO then placed the package into his vehicle and drove away.

55.   Investigators maintained surveillance on OCASIO as he drove around Worcester meeting with various individuals for short durations of time.   During these interactions, investigators observed OCASIO discreetly exchanging small items with the individuals.  Based on training and experience, this behavior is consistent with retail drug distribution.  At 1:14 p.m., SAEZ, using Target Telephone 2, called OCASIO on Target Telephone 4 for approximately 18 seconds.  A few minutes later, at approximately 1:21 p.m., investigators observed OCASIO return to his residence at 328 Greenwood Street.

_____

[9] Investigators used a cell-site simulator, pursuant to a federal search warrant, to determine unique phone identifiers in SAEZ's possession.  The cell-site simulator showed that SAEZ was the user of Target Telephone 2.  Wire communications later confirmed that SAEZ is the user of Target Telephone 2.

56.     At approximately 1:50 p.m., investigators observed OCASIO walking next to SAEZ in his apartment complex's parking lot while holding an empty USPS package. Investigators observed OCASIO throw an empty USPS package into the community dumpster. Investigators were able to retrieve the discarded USPS package. Investigators confirmed that the discarded package was the packaging of the Third 19 Auburn Street Package. A narcotic trained canine alerted to the empty package for the odor of narcotics. Based on training and experience, the indicia described above, and the positive canine alert, investigators believe that the Third 19 Auburn Street Package contained narcotics.

57.     At approximately 2:10 p.m., SAEZ left 328 Greenwood Street in SAEZ's red Honda Accord. SAEZ drove to 13 Stoneland Road, the same location where MENDEZ had previously dropped off the First 69 Outlook Package. Pole camera footage shows that, once at 13 Stoneland Road, SAEZ retrieved a rectangular shaped bag from the front passenger seat of his vehicle. SAEZ then walked with the bag onto the property at 13 Stoneland Road. Below, I include a still shot of the pole camera footage for reference:



58.     At approximately 2:30 p.m., SAEZ exited the property of 13 Stoneland Road and walked empty-handed to his vehicle.  Based on training and experience and the information above, I believe that the Third 19 Auburn Street Package contained narcotics, that OCASIO received the Third 19 Auburn Street Package on behalf of the SAEZ DTO, that OCASIO transported and delivered the suspected narcotics to SAEZ, and that SAEZ then stored the suspected narcotics at the property of 13 Stoneland Street.  Further, based on the information above, including the multiple deliveries at 13 Stoneland Street, investigators believe that SAEZ used the garage behind the 13 Stoneland Road residence as a stash location for narcotics.

### iii.     The Second 3 Richard Avenue Package

59.     Also on May 20, 2025, investigators established surveillance in anticipation of the delivery of the Second 3 Richard Avenue Package.  At approximately 12:42 p.m., investigators, via drone video, observed a USPS carrier deliver the package at 3 Richard Avenue.  Investigators then observed GILCHREST exit 3 Richard Avenue, retrieve the package, and bring it inside the residence.

60.     Toll records show that one minute later, at approximately 12:43 p.m., GILCHREST, using the GILCHREST-5154 Phone, called SAEZ at Target Telephone 1 for approximately 14 seconds.  At 2:04 p.m., GILCHREST, using the GILCHREST-5154 Phone, texted SAEZ at Target Telephone 1.  And at 2:50 p.m., SAEZ used Target Telephone 1 to call the GILCHREST-5154 Phone for 22 seconds.

61.     Two minutes later, at approximately 2:52 p.m., investigators observed SAEZ arrive at 32 Ash Street.  As noted above, 32 Ash Street is a residence a short walkable distance from 3 Richard Avenue.  At approximately 3:14 p.m., GILCHREST carried the suspected drug package

from 3 Richard Avenue to 32 Ash Street. Investigators observed GILCHREST place the package in front of SAEZ, who carried the package into 32 Ash Street.

62.    At approximately 4:23 p.m., investigators observed SAEZ exit 32 Ash Street carrying a gray, square-shaped shopping bag, which was similarly shaped to the suspected drug package. Investigators observed SAEZ place the bag into the trunk of his vehicle before driving back to his residence at 148 Ballouville Road.

63.    Based on training and experience and the information above, investigators believe that GILCHREST received a suspected drug package on behalf of the SAEZ DTO, that GILCHREST and SAEZ coordinated via phone the receipt and delivery of the suspected drug package, and that GILCHREST transported and delivered the suspected drug package to SAEZ.

   e.  **In June 2025, GILCHREST Conducted Countersurveillance After Receiving a Suspected Narcotics Package**

64.    On June 10 and June 11, 2025, investigators learned that several suspected drug packages had been shipped from Puerto Rico and addressed to addresses in Worcester County used by the SAEZ DTO, which contained the typical indicia of packages containing narcotics. One in particular, hereinafter the "Third 3 Richard Avenue Package," was identified as USPS Priority Mail (Tracking # 9505 5114 5582 5161 6868 83), mailed on June 10, 2025, weighing 10 pounds and 1 ounce, addressed to "Jay Perry, 3 Richard Ave., Webster, MA #01570" and from "Luis G. Torres, 99 Callebailen Dorado P.R., #00646." As noted above in connection with the First 3 Richard Avenue Package and the Second 3 Richard Avenue Package, the listed recipient is fictitious, and no known individual named "Jay Perry" is associated with 3 Richard Avenue.

65.    Based on my training and experience, the fact that the Third 3 Richard Avenue Package originated in Puerto Rico, had a fictitious recipient name and handwritten sender and

addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe that this package contained narcotics.

66.     On June 12, 2025, this package was set for delivery and investigators established surveillance on 3 Richard Avenue in anticipation for the delivery.  At approximately 10:04 a.m., investigators observed the mail carrier deliver the suspect package near the front steps of 3 Richard Avenue.  At approximately 10:05 a.m., surveillance observed GILCHREST retrieve the suspect package from the front steps area of 3 Richard Avenue. Once GILCHREST took custody of the suspect package, he walked to the rear of 3 Richard Avenue. GILCHREST then set the package down and appeared to be attempting to manipulate the outer package in some way before taking the package out of investigators' view.

67.     Five minutes later, at approximately 10:10 a.m., GILCHREST appeared from the side of 3 Richard Avenue and walked down the roadway towards Ash Street, where he had previously delivered other suspected narcotics packages to SAEZ. GILCHREST then looked up at the sky in the direction of the drone being operated in the area by investigators. As a result of GILCHREST's attention on the drone, the drone operation was cancelled and investigators observed GILCHREST walk back towards 3 Richard Avenue.  Below I include a photo of GILCHREST watching the drone:



68.     Two minutes later, at approximately 10:12 a.m., investigators observed GILCHREST back out in front of 3 Richard Avenue.  GILCHREST was on a motorized scooter and left in the direction of where he last observed the drone in the sky. Surveillance observed GILCHREST drive around the neighborhood several times, apparently looking for the drone. Based on training and experience and the information above, I believe that, upon seeing the drone, GILCHREST aborted his trip to 32 Ash Street and instead conducted countersurveillance. Accordingly, I further believe that GILCHREST is concerned about being seen with the packages and that he knows that the packages he receives and delivers to SAEZ contain narcotics.

69.      Investigators obtained a federal warrant to search GILCHREST's Google cloud account gilchrestjustin077@gmail.com.  *See* 25-mj-4369-DHH.  The account contained photos of GILCHREST's Massachusetts identification card, as well as numerous photos of suspected narcotics, including, for example, photos of broken pieces of a white crystalline substance, of bags with white powder, of mushrooms, and of marijuana.

70.     After the drone incident, GILCHREST ceased all contact with SAEZ's Target Telephone 1 and Target Telephone 2.

   **f.  In July 2025, SAEZ Coordinated the Distribution and Storage of Suspected Drug Packages while MARTINEZ MENDEZ and RIVERA RODRIGUEZ Tracked the Suspected Drug Packages**

71.     On July 15, 2025, investigators learned that five suspected drug packages had been shipped between July 3 and 5, 2025, from Puerto Rico and addressed to addresses in Worcester County used by the SAEZ DTO.  The five packages, which each contained the typical indicia of packages containing narcotics, were identified as follows:

   a.  The Fourth 19 Auburn Street Package.  USPS Priority Mail (Tracking # 9505 5114 5582 5184 6892 29), mailed on July 3, 2025, weighing 10 lbs., 4 ounces, addressed to Carlos Rivera, 19 Auburn St., Worcester, MA 01605, with sender information Eduardo Rivera, Calle 5 D25 Mameyal, Dorado, Puerto Rico

00646.  As noted above in connection with the First, Second, and Third 19 Auburn Street Packages, an individual named "Carlos Rivera" is associated with 19 Auburn Street, Worcester, Massachusetts.  I refer to this package as the "Fourth 19 Auburn Street Package."

b.  The First 36 Fairfield Street Package.  USPS Priority Mail (Tracking # 9505 5103 3668 5184 9802 64), mailed on July 3, 2025, weighing 10 lbs., addressed to Davon Smith, 36 Fairfield St., Worcester, MA 01602, with sender information Luis G. Torres, 99 Calle Bailen Dorado, Puerto Rico, 00646.  Based on public records, the listed return information is fictitious.  An individual named "Davon Smith" is associated with 36 Fairfield Street, Worcester, Massachusetts.  I refer to this package as the "First 36 Fairfield Street Package."

c.  The First 413 Charlestown Meadows Drive Package.  USPS Priority Mail (Tracking # 9505 5103 3666 5186 8379 02), mailed on July 5, 2025, weighing 10 lbs., addressed to Brianna Razzano, 413 Charlestown Meadows Drive, Westborough MA 01581, with sender information Pedro Rivera Razzano, Calle 2A12 Mameyal Dorado, Puerto Rico, 00646.  Based on public records, the listed return information is fictitious.  A known individual named "Brianna Razzano" is associated with 413 Charlestown Meadows Drive, Westborough, Massachusetts.  I refer to this package as the "First 413 Charlestown Meadows Drive Package."

d.  The First 38 Canterbury Street Package.  USPS Priority Mail (Tracking # 9505 5103 3666 5186 8379 02), mailed on July 5, 2025, weighing 9.15 lbs., addressed to Luis Pena, 38 Canterbury Street, Apt 1, Worcester, MA 01610, with sender information Paul Rivera Pena, 5 Calle San Alberto Cantano, Puerto Rico 00962.  Based on public records, the listed recipient is fictitious, and no known individual named "Luis Pena" is associated with 38 Canterbury Street, Apartment 1, Worcester, Massachusetts.  I refer to this package as the "First 38 Canterbury Street Package."

e.  The Fourth 3 Draper Street Package.  The USPS Priority Mail, (Tracking # 9505 5114 5581 5186 8839 30), mailed on July 5, 2025, weighing 9.15 lbs., addressed to "Danny Torres Rivera, 3 Draper St., Apt #1, Worcester, MA 01603, with sender information "Luis G. Rivera, Calle 13B-162, Urbel Mameya Dorado, Puerto Rico 00646.  Based on public records, the listed recipient is fictitious, and no known individual named "Danny Torres Rivera" is associated with 3 Draper Street, Apartment 1, Worcester, Massachusetts.  I refer to this package as the "Fourth 3 Draper Street Package."

72.  Based on my training and experience, the fact that each of these packages originated in Puerto Rico, had a fictitious sender and/or addressee name and handwritten sender and addressee

26

information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe that each of these packages contained narcotics.

73.     USPS business records showed that several IP addresses associated with MARTINEZ MENDEZ and RIVERA RODRIGUEZ were tracking the status of these five suspected drug packages.  First, two IP addresses associated with T-Mobile U.S. Inc. queried the status of one of the five packages.  T-Mobile records showed that (787) 948-5209 ("Target Telephone 3") was linked to both IP addresses.  T-Mobile subscriber records identified the subscriber of this phone number as "Jan Martinez," which investigators know is an alias of MARTINEZ MENDEZ.  While investigators believe Target Telephone 3 was used by MARTINEZ MENDEZ during this time period, investigators believe the phone was later used by RIVERA RODRIGUEZ.

74.     Further, an IP address associated with Charter Communications, Inc. had also queried the status of all five suspected drug packages.  Charter Communications records identified the user of this IP address to be RIVERA RODRIGUEZ, with billing address 3 Draper Street, Worcester, Massachusetts.

### i.     The Fourth 19 Auburn Street Package

75.     Surveillance footage from the Toa Baja Post Office in Puerto Rico showed the MARTINEZ MENDEZ shipped the Fourth 19 Auburn Street Package.  Below, I include a still shot of the surveillance footage for reference:



76.     On July 15, 2025, investigators checked USPS business records and learned that the Fourth 19 Auburn Street Package had never left Puerto Rico.  On July 25, 2025, investigators located the package and had it sent to Massachusetts.  On August 6, 2025, investigators received the Fourth 19 Auburn Street Package in Worcester, Massachusetts and applied for a search warrant.  On August 8, 2025, Magistrate Judge Hennessy issued a warrant authorizing the search and seizure of the Fourth 19 Auburn Street Package.  *See* 25-mj-4400-DHH.

77.     On August 11, 2025, investigators searched the Fourth 19 Auburn Street Package. The package contained two brick-shaped objects with a gross weight of approximately 2,455 grams, wrapped in clear plastic, dryer sheets, carbon paper, and black electrical tape.  When unwrapped, the packaging contained a white powdery substance, which field tested positive for cocaine.  This substance was sent to the DEA laboratory for testing and the laboratory identified the substance as cocaine hydrochloride with a net weight of 2004.9 grams.

28

78.    Based on training and experience and the information above, I believe that MARTINEZ MENDEZ mailed approximately two kilograms of cocaine to the SAEZ DTO and that MARTINEZ MENDEZ and RIVERA RODRIGUEZ tracked the delivery of this cocaine in furtherance of the transaction.

ii.    SAEZ's Receipt and Storage of the Rest of the Suspected Narcotics Packages

79.    Because investigators learned about the July 2025 packages approximately two weeks after they were mailed from Puerto Rico, investigators were not able to conduct physical surveillance on the delivery of the other four suspected drug packages. However covert video surveillance from outside of SAEZ's residence at 148 Ballouville Road and outside 13 Stoneland Road showed that, on the days the packages were delivered, SAEZ carried items consistent in appearance with the suspected drug packages into the property at 13 Stoneland Road, an identified drug stash location for the SAEZ DTO, as described above.

80.    *The First 38 Canterbury Street Package and the Fourth 3 Draper Street Package*. USPS records show that, on July 7, 2025, the Fourth 3 Draper Street Package was delivered at 9:11 a.m., and the First 38 Canterbury Street Package was delivered at 10:53 a.m. Surveillance footage shows that, at approximately 4:48 p.m., SAEZ walked onto the 13 Stoneland Road property carrying a yellow and white shopping bag that appeared to contain square shaped objects, consistent in size and shape with the suspected drug packages that were delivered that day.

81.    *The First 413 Charlestown Meadows Drive Package.* USPS records show that, on July 8, 2025, the First 413 Charlestown Meadows Drive package was delivered at 12:20 p.m.[10] At

_____

[10] 413 Charlestown Meadows Drive is located within an apartment community known as the Residences at Westborough Station where SAEZ has been observed working as a maintenance worker.

3:34 p.m., SAEZ arrived at 13 Stoneland Road and removed a white box that appeared to be a postal box from the rear passenger seat of his vehicle. SAEZ entered the property at 13 Stoneland Road with the box, and was observed departing the residence carrying only a cell phone at approximately 4:25 p.m. I include a still shot of the surveillance footage outside 13 Stoneland Road for reference below:



82.      *The First 36 Fairfield Street Package*.  USPS records show that, on July 9, 2025, the First 36 Fairfield Street Package was delivered at 2:57 p.m.  At approximately 4:33 p.m., surveillance footage showed that SAEZ entered the property at 13 Stoneland Road carrying a white shopping bag that appeared to have a square-shaped bottom.  At 4:47 p.m., SAEZ exited 13 Stoneland Road empty-handed.  I include a still shot of the surveillance footage outside 13 Stoneland Road for reference below:



83.     Based on training and experience and the information above, including the timing of the deliveries, the fact that one of the July 2025 packages contained cocaine, and the video surveillance, investigators believe that SAEZ received the remaining four suspected narcotics packages and transported them to and stored them at the property at 13 Stoneland Road.

**g. In August 2025, SAEZ Coordinated the Distribution and Storage of a Suspected Narcotics Package with Other Target Subjects, including RIVERA RODRIGUEZ and** ▮▮▮▮▮▮▮▮▮

84.     On August 21, 2025, investigators learned of another suspected drug package inbound from Puerto Rico to 3 Draper Street, which, as described above, was the residence of RIVERA RODRIGUEZ and an address the SAEZ DTO used to receive multiple suspected cocaine packages.  The package, hereinafter referred to as the "Fifth 3 Draper Street Package," contained the typical indicia of packages containing narcotics, and was identified as follows:  USPS Priority Mail (Tracking # 9505 5114 5581 5233 9045 02), mailed on August 21, 2025, weighing 10 lbs., 11.4 ounces, addressed to Carmen Rivera, 3 Draper Street, Apartment 1, Worcester, MA 01604, with sender information "Juan Rivera, 99 Callebailen Dorado, Puerto Rico 00646."  Based on public records, the listed addressee is fictitious, and no known individual named "Carmen Rivera" is associated with 3 Draper Street, Apartment 1, Worcester, Massachusetts.  Based on my training and experience, the fact that this package originated in Puerto Rico, had a fictitious recipient name and handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe that the Fifth 3 Draper Street Package contained narcotics.

85.     Surveillance footage from the Toa Baja Post Office in Puerto Rico showed that RIVERA RODRIGUEZ was the sender of the package.  Below I include a still shot of the surveillance footage for reference:



86.     On August 25, 2025, investigators established surveillance at 3 Draper Street in anticipation of the delivery of the suspected drug package.  At approximately 9:22 a.m., an investigator operating in an undercover capacity, parked a USPS vehicle on Draper Street and delivered the suspected drug package to the front porch of the residence.  The package was received by an unknown individual who brought the package inside.

87.     A few hours later, at approximately 1:59 p.m., SAEZ arrived at 3 Draper Street. Investigators observed SAEZ meet with ████████████████████ and an unidentified man.

88.     At approximately 3:31 p.m., investigators observed all three men drive their respective vehicles away from 3 Draper Street.  Investigators maintained surveillance on the vehicles until SAEZ arrived at 13 Stoneland Road at approximately 3:45 p.m.  Covert surveillance video showed that SAEZ then exited the driver's seat of his vehicle and retrieved a weighted backpack from the rear passenger seat of his vehicle.  Below, I include a still shot of the surveillance footage for reference:



89.    SAEZ then carried the weighted backpack onto the property at 13 Stoneland Road. Investigators observed that MENDEZ was also present at 13 Stoneland Road.  MENDEZ departed the residence at approximately 4:31 p.m.

90.    At approximately 5:01 p.m., SAEZ exited 13 Stoneland Road carrying a backpack on his shoulders and holding a brown bag in his hands.  SAEZ then drove from 13 Stoneland Road to 328 Greenwood Street, OCASIO's residence.   SAEZ arrived at 328 Greenwood Street at approximately 5:11 p.m.  SAEZ departed 328 Greenwood Street at approximately 9:39 p.m.

91.    After departing OCASIO's residence, SAEZ traveled to 28 Curtis Hill Road, Charlton, Massachusetts, which was the residence of BANDILLA, who investigators knew to be a retail drug distributor in the Worcester County area.  SAEZ arrived at 28 Curtis Hill Road at approximately 9:58 p.m.

92.    Based on training and experience and the information above, investigators believe that the Fifth 3 Draper Street Package contained cocaine, that SAEZ received and stored the Fifth 3 Draper Street Package, and that SAEZ subsequently delivered cocaine to OCASIO and BANDILLA for them to distribute.

**h. In September 2025, SAEZ Coordinated the Distribution and Storage of a Suspected Narcotics Package with Other Target Subjects, including ████ █████████ OCASIO**

93.    On September 4, 2025, investigators discovered a suspected drug package had been mailed from Puerto Rico to 36 Fairfield Street, Worcester, Massachusetts, an address used by the SAEZ DTO to receive suspected narcotics packages.  The package, hereinafter the "Second 36 Fairfield Street Package," contained the typical indicia of packages containing narcotics, and was identified as follows:  USPS Priority Mail (Tracking # 9505 5114 5581 5246 9113 82), mailed on September 3, 2025, weighing 10.8 lbs., addressed to Davon Smith, 36 Fairfield St, Worcester, MA 01602, with sender information "Samantha Martinez, p1 Calle Los Hermanos Toa Baja, Puerto Rico, 00949."  As noted above in connection with the First 36 Fairfield Street Package, based on public records, the listed return information is fictitious and an individual named "Davon Smith" is associated with 36 Fairfield Street, Worcester, Massachusetts.    Based on my training and experience, the fact that this package originated in Puerto Rico, had fictitious return information and handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe the Second 36 Fairfield Street package contained cocaine.

94.    ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████

34



95.

96.     Shortly after ███████████ shipped the Second 36 Fairfield Package, on September 11, 2025, RIVERA RODRIGUEZ sent a message to ███████████ at the ███████ account, "Send me the photo of the box ██████." Shortly thereafter, RIVERA RODRIGUEZ stated, "Done . . . Delete it . . . delete it from the chat." There was no photo in the messages. Based on the timing and content of the messages and the surveillance footage described above, I believe that "box" referred to a narcotics package.

97.     Therefore, based on the information above, I believe that ███████████ shipped the Second 36 Fairfield Package, that RIVERA RODRIGUEZ asked ███████████ for a photo of a narcotics package, that RIVERA RODRIGUEZ asked ███████████ to delete the photo because the photo would have been incriminating, ███████████ ███████████████████████████████.

98.     On September 5, 2025, at approximately 10:26 a.m., an investigator acting in an undercover capacity as a USPS carrier, delivered the Second 36 Fairfield Street Package. Just minutes later, at approximately 10:35 a.m., GPS data from SAEZ's Ford Explorer, obtained pursuant to a federal search warrant, showed him traveling away from his residence, at 148 Ballouville Road, Dayville, Connecticut. At approximately 11:05 a.m., SAEZ arrived at 13 Stoneland Road. Investigators observed SAEZ walk onto the property at 13 Stoneland Road. At approximately 11:10 a.m., SAEZ came back to his vehicle and departed the area.

99.     Meanwhile, at 36 Fairfield Street, at approximately 11:14 a.m., investigators observed an unidentified male grab the package and bring it into the residence. Approximately one minute later, investigators observed SAEZ park in front of 36 Fairfield Street. Investigators observed the lights on the vehicle turn off, however, within less than a minute, the lights turned back on and SAEZ drove away without interacting with anyone at 36 Fairfield Street or receiving

the package. Investigators believed that SAEZ detected the presence of law enforcement and left the scene without receiving the package.

100. Toll records showed that on September 5, 2025, between the time when SAEZ left his residence at 10:35 a.m. and the time he left 36 Fairfield Street at 11:17 a.m., SAEZ, using Target Telephone 2, was in voice contact with the OCASIO's Target Telephone 4 three times. Based on training and experience, the timing of SAEZ's travels, and the timing of the delivery of the suspected narcotics package, investigators believe SAEZ communicated with OCASIO about the suspected narcotics package.

101. GPS data for SAEZ's vehicle showed that SAEZ returned to 36 Fairfield Street later that day. SAEZ's vehicle left 148 Ballouville Road, Dayville, Connecticut, at approximately 9:45 p.m. At approximately 10:14 p.m., SAEZ's vehicle parked in front of 36 Fairfield Street. At approximately 10:35 p.m., SAEZ's vehicle left 36 Fairfield Street, and parked adjacent to 13 Stoneland Road at approximately 10:44 p.m. SAEZ's vehicle left 13 Stoneland Road at approximately 11:46 p.m.

102. Based on training and experience and the information above, including SAEZ's observed patterns, investigators believe that SAEZ returned to 36 Fairfield Street to retrieve the Second 36 Fairfield Street Package and subsequently transported and stored the suspected narcotics package at the property of 13 Stoneland Street, just has SAEZ had done with prior packages.

> **g.  In September 2025, SAEZ Coordinated the Distribution and Storage of a Suspected Narcotics Package with Other Target Subjects, including ▋▋▋▋▋ ▋▋▋▋▋▋▋ and OCASIO**

103. On September 7, 2025, investigators learned a suspected drug package had been mailed from Puerto Rico to 19 Auburn Street, an address used by the SAEZ DTO to receive

suspected narcotics packages.  The package, hereinafter referred to as the "Fifth 19 Auburn Street Package," contained the typical indicia of packages containing narcotics discussed *supra*, and was identified as follows:  USPS Priority Mail, (Tracking # 9505 5103 3666 5249 8600 52), mailed on September 7, 2025, weighing 10.75 lbs., addressed to Carlos Rivera, 19 Auburn St., Worcester, MA 01605, with sender information "Amanda Rivera, 99 Callebailen Dorado, Puerto Rico, 00646."  As noted above in connection with all prior 19 Auburn Street packages, an individual named "Carlos Rivera" is associated with 19 Auburn Street, Worcester, Massachusetts.  Based on my training and experience, the fact that this package originated in Puerto Rico, was addressed to a known drop location for the SAEZ DTO, had handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe the Fifth 19 Auburn Street Package contained cocaine.

104.

105.    On September 9, 2025, investigators set up physical surveillance at 19 Auburn Street in anticipation of the delivery of the package.  At approximately 9:26 a.m., investigators observed OCASIO's red Hyundai Sonata, park on the street in front of 19 Auburn Street. OCASIO drove around the neighborhood until a USPS mail carrier turned onto Auburn Street at approximately 10:40 a.m.  OCASIO followed the USPS truck onto Auburn Street, before parking in the driveway of 19 Auburn.  Investigators observed the USPS carrier deliver a large package at approximately 10:47 a.m.

106.    At approximately 10:49 a.m., OCASIO exited his vehicle and retrieved the suspected drug package.  Investigators observed OCASIO talking on his cell phone while

38

approaching 19 Auburn Street. OCASIO carried the package from the residence to his vehicle and placed the package in the rear driver's side seat. OCASIO then drove to his apartment at 328 Greenwood Street. At approximately 11:16 a.m., investigators observed OCASIO carry the suspected drug package into the apartment building.

107.    At approximately 12:32 p.m., investigators observed OCASIO walking from his apartment building towards his vehicle. At approximately 12:34 p.m., investigators observed OCASIO at the rear of his vehicle manipulating objects in his trunk with an unidentified man. Based on the vantage point of the surveillance, investigators were not able to determine whether OCASIO carried anything from his apartment to his vehicle. Investigators observed OCASIO holding a brick-like object that appeared to be wrapped in black electrical tape. Based on my training and experience, the brick-like object OCASIO handled was consistent in appearance with a wrapped kilogram of narcotics. At approximately 1:10 p.m., investigators observed OCASIO depart the area in his vehicle.

108.    GPS data for SAEZ's vehicle showed that SAEZ's vehicle arrived at 328 Greenwood Street at approximately 1:31 p.m. and left just a few minutes later. SAEZ's vehicle then arrived at 13 Stoneland Road. Surveillance footage shows that SAEZ exited his vehicle with an individual known to investigators ("Subject 2"), carrying a weighted blue cooler bag towards 13 Stoneland Road, out of sight of the investigators. Investigators do not believe SAEZ was in possession of the contents of the Fifth 19 Auburn Street Package. Based on the timing of the package delivery and SAEZ's visit and the fact that 13 Stoneland appears to be a stash location for the SAEZ DTO, investigators believe that the blue cooler may have contained either drug proceeds or other drug contraband. Below, I include a still shot of the surveillance footage for reference:



109.    At approximately 1:56 p.m., SAEZ and Subject 2 walked empty-handed from the area of 13 Stoneland Road and into SAEZ's vehicle. Investigators observed SAEZ on his phone when he entered the front passenger seat of the vehicle, with Subject 2 driving. Toll records showed that SAEZ used Target Telephone 2 to call OCASIO on Target Telephone 4, at 1:56 p.m. The call lasted 56 seconds. Based on training and experience and the information above, investigators believe that SAEZ called OCASIO regarding the Fifth 19 Auburn Street Package.

110.    At approximately 2:34 p.m., investigators observed SAEZ's vehicle arrive at OCASIO's apartment at 328 Greenwood Street. Investigators observed SAEZ meeting with OCASIO in the parking lot of the apartment building. Below, I include a photo of their meeting for reference:



111.    Investigators observed SAEZ and OCASIO walk towards the apartments out of sight.  At approximately 3:17 p.m., SAEZ and OCASIO exited the apartment building.  SAEZ and OCASIO spoke to each other in the parking lot for approximately 12 minutes.  At approximately 3:29 p.m., SAEZ and OCASIO both entered their vehicles and departed the area.  After leaving 328 Greenwood Street, SAEZ traveled to 15 Cheever Street, Worcester, Massachusetts, which is the suspected residence of Subject 2.   SAEZ then traveled to 32 Ash Street, Webster, Massachusetts, which is an address where SAEZ received the First and Second 3 Richard Avenue Packages from GILCHREST, prior to returning to his residence in Connecticut.

112.    Based on training and experience and the information above, investigators believe that OCASIO received the suspected narcotics package and that SAEZ and OCASIO communicated with each other to coordinate the receipt of the package.

**B.  The Title III Wiretap Investigation**

      **a.  The Wiretap Authorization Orders**

113.    Between October 22, 2025, and April 1, 2026, investigators intercepted wire and/or electronic communications to and from multiple phones used by the SAEZ DTO.

114.    On October 21, 2025, the Honorable Margaret Guzman, United States District Judge for the District of Massachusetts, signed an Order (hereinafter, the "October 21 Order") authorizing the initial interception of wire and electronic communications to and from Target Telephones 1 and Target Telephone 2, both used by SAEZ.  The monitoring of communications over Target Telephone 1 and Target Telephone 2 pursuant to the October 21 Order began on October 22, 2025, and terminated on November 20, 2025.

115.    On November 20, 2025, Judge Guzman signed an Order (hereinafter, the "November 20 Order") authorizing the continued interception of wire communications of Target Telephone 1 and Target Telephone 2, used by SAEZ; along with the initial interception of wire communications to and from Target Telephone 3, used by RIVERA RODRIGUEZ; and the initial interception of wire and electronic communications to and from Target Telephone 4, used by OCASIO.  The monitoring of communications over Target Telephone 1, Target Telephone 2, Target Telephone 3, and Target Telephone 4 pursuant to the November 20 Order began on November 21, 2025, and terminated on December 20, 2025.

116.    On December 22, 2025, Judge Guzman signed an Order (hereinafter, the "December 22 Order") authorizing the continued interception of wire communications of Target Telephone 1, used by SAEZ, and Target Telephone 3, used by RIVERA RODRIGUEZ, along with the initial interception of wire communications to and from Target Telephone 5, used by MARTINEZ MENDEZ, and phone number (774)-366-9851 ("Target Telephone 6"), used by an individual known to the government.  The monitoring of communications over Target Telephone 1, Target Telephone 3, Target Telephone 5, and Target Telephone 6 pursuant to the December 22 Order began on December 23, 2025 and terminated on January 21, 2026.

117.    On January 23, 2026, the Honorable Myong J. Joun, United States District Judge

for the District of Massachusetts, signed an order (hereinafter the "January 23 Order") authorizing the continued interception of wire communications to and from Target Telephone 1, used by SAEZ, and Target Telephone 5, used by MARTINEZ MENDEZ, along with the initial interception of wire communications to and from phone number (787) 979-0267 ("Target Telephone 7"), used by TORRES. The monitoring of communications over Target Telephone 1, Target Telephone 5, and Target Telephone 7 pursuant to the January 23 Order began on January 24, 2026, and terminated on February 21, 2026.

118.    On March 3, 2026, Judge Joun signed an Order (hereinafter, the "March 3 Order") authorizing the renewed interception of wire communications of Target Telephone 1 and Target Telephone 2, both used by SAEZ, Target Telephone 5, used by MARTINEZ MENDEZ, and Target Telephone 7, used by TORRES. The March 3 Order also authorized the initial interception of wire communications of phone number (682) 470-3920 ("Target Telephone 8"), also used by TORRES. The monitoring of communications over Target Telephone 1, Target Telephone 2, Target Telephone 5, and Target Telephone 7 pursuant to the March 3 Order began on or about March 3, 2026, terminated on April 1, 2026.

### b. On October 23, 2025, SAEZ Met with OCASIO to Distribute Narcotics

119.    On October 23, 2025, SAEZ used Target Telephone 1 to call OCASIO at Target Telephone 4 (Session 12). During the call, OCASIO asked SAEZ for "slow motion, slow motion, slow motion." SAEZ responded, "Just the slow?" OCASIO further stated, "Remember, I got a little bit of that thing for that nigga. I got that shit for him, it's real good," and added, "That other shit is flying out the window!" SAEZ responded, "I'll see you over there."

120.    Based on training and experience, I believe that when SAEZ and OCASIO used the phrase "slow motion," they were referring to a street name for fentanyl. I believe "slow motion"

43

is used as street language for fentanyl because of the effects fentanyl has on the human body.  I further believe that when OCASIO told SAEZ he "had a little bit of that thing" and "got that shit for him," he was referring to narcotics.  Similarly, I further believe when OCASIO told SAEZ, "that other shit is flying out the window," OCASIO was conveying to SAEZ that the DTO's drugs have been in demand in Worcester County.   Based on these statements, I believe that OCASIO not only receives suspected drug packages for the SAEZ DTO, but also, that OCASIO is involved in the DTO's distribution of narcotics in Massachusetts.

121.    Later that day, at approximately 3:12 p.m., OCASIO, using Target Telephone 4 called SAEZ (Session 31), and SAEZ, using Target Telephone 2, told OCASIO that he was heading to OCASIO's residence.  At approximately 3:27 p.m., investigators observed SAEZ pull into the parking lot of OCASIO's residence at 328 Greenwood Street.  At approximately 3:28 p.m., SAEZ, using Target Telephone 2, briefly called OCASIO (Session 33) and said, "I'm here.  Open the door."  Shortly after the call, investigators observed SAEZ walk into OCASIO's apartment building.  At approximately 3:40 p.m., investigators observed SAEZ exit the apartment building and then depart the area in his vehicle.  Based on SAEZ and OCASIO's earlier narcotics discussion and agreement to meet, the short length of SAEZ's stay at OCASIO's residence, my training and experience, and the intercepted calls and observations described above, I believe that SAEZ met OCASIO at OCASIO's residence to drop off the fentanyl that OCASIO had requested earlier in the day.

c.  **Also on October 23, 2025, SAEZ Met with**  **to Collect Drug Proceeds**

122.    Approximately nine minutes after leaving OCASIO's residence, SAEZ, using Target Telephone 1, made an outgoing call to ███████████ at ████████ (the "███████████-9812 Phone") (Session 16).  During the conversation, SAEZ told

███████████████████████████ that he wanted to pick up money that ██████████████████ owed SAEZ and that he wanted to purchase narcotics from ██████████████████ 's connection. Specifically, SAEZ said, "Let me know so I can grab that money today." He added, "Or I don't know if you want to call your buddy . . . That motherfucker, uh, you know, about the other stuff."

████████████████████████████████████████████████████████████████████

SAEZ replied, "50 or 100, whatever . . . But if he's gonna have us waiting all day, I'll just grab the bread and grab it from my other man."

123.   Based on training and experience, I believe that when SAEZ asked ███████████ ███████████ to call his "buddy" about "the other stuff," SAEZ was asking ███████████ ███████████ to call ████████ to get drugs for him. I further believe SAEZ's response that SAEZ wanted "50 or 100" was a reference to quantities of drugs. Based on the investigation and training and experience, and the fact that SAEZ regularly received kilograms of cocaine in the mail, I believe that SAEZ's reference to "50 or 100" is likely a reference to grams of narcotics. Based on training and experience, I believe that when SAEZ said, "But if he's gonna have us waiting all day, I'll just grab the bread and grab it from my other man," SAEZ meant that if ██████████ ██████████ 's friend took too long to get SAEZ the drugs, SAEZ would just grab the money ████████████████ owed SAEZ and get the drugs from someone else SAEZ knows.

124.   Later that day, at approximately 4:48 p.m., SAEZ, using Target Telephone 1, called ████████████████ on the ████████████████ -9182 Phone (Session 22). During the conversation, ████████████████ told SAEZ that ████████ "didn't call" him back. During the call, SAEZ and ████████████████ agreed to meet by the Wendy's Plaza in Worcester, Massachusetts. At approximately 4:52 p.m., investigators established surveillance at the Wendy's restaurant, located on Southbridge Street in Worcester. At approximately 5:08 p.m.,

45

investigators observed ███████████████ exit a maroon minivan.  Investigators observed ███████████████ enter the front passenger seat of SAEZ's Ford Explorer. Approximately 8 minutes later, investigators observed ███████████████ exit SAEZ's vehicle.  ███████████████ departed the area in an Acura SUV.  SAEZ also drove away in his vehicle.  Based on training and experience and their earlier conversation, I believe ███████████████ gave SAEZ drug proceeds in the Wendy's parking lot as they had agreed.

### d. On October 24, 2025, HERNANDEZ RIOS Mailed a Suspected Drug Package to One of the SAEZ DTO's Drop Addresses

125.   On October 25, 2025, investigators learned of a suspected drug package inbound from Puerto Rico to 3 Draper Street, an address in Worcester County used by the SAEZ DTO. The package, hereinafter the "Sixth 3 Draper Street Package," contained the typical indicia of packages containing narcotics, and was identified as follows:  USPS Priority Mail (Tracking #9505 5114 5583 5297 8575 07), weighing 12.3 lbs., addressed to "Nicole Rivera, 3 Draper Street, Apartment 1, Worcester, MA 01604," with sender information, "Miriam Rivera, P75 Calle Los Vaqueros Toa Baja, PR 00949."  Based on public records, the listed recipient is fictitious, and no known individual named "Nicole Rivera" is associated with 3 Draper Street, Apartment 1, Worcester, Massachusetts.  Based on training and experience, the fact that the package originated in Puerto Rico, had a fictitious recipient name and handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe that the Sixth 3 Draper Street Package contained cocaine.

126.   Surveillance footage from the Toa Baja Post Office in Puerto Rico shows that HERNANDEZ RIOS shipped the Sixth 3 Draper Street Package.  To identify the shipper, investigators reviewed the accounts that RIVERA RODRIGUEZ follows on Instagram.  One of

those accounts, with Instagram username "vianeshla," was visible to the public, and it contained photos of a woman whose appearance matched that of the shipper. Specifically, the shipper and the woman on the "vianeshla" account both had matching distinctive tattoos on the shoulder and arm. Further, a Clear database search showed that the phone number associated with the "vianeshla" account was linked to HERNANDEZ RIOS. Based on the content posted, which included videos of HERNANDEZ RIOS, the account name, which is HERNANDEZ RIOS's middle name, and the Clear search, investigators believe that HERNANDEZ RIOS is the user of the "vianeshla" account and that she was the shipper of the Sixth 3 Draper Street Package.

127. On October 27, 2025, at approximately 8:30 a.m., investigators established surveillance on 3 Draper Street in anticipation of the delivery of the Sixth 3 Draper Street Package. At approximately 9:20 a.m., investigators observed a USPS carrier with a large brown box walking toward 3 Draper Street. At approximately 9:23 a.m., investigators saw the carrier walking away from 3 Draper Street without the box, which indicated that the package was delivered.

### e. On October 27, 2025, OCASIO Met with SAEZ to Collect Crack Cocaine

128. A few hours after the Sixth 3 Draper Street Package was delivered, at approximately 12:02 p.m., SAEZ, using Target Telephone 1, received an incoming call from OCASIO (Session 70). During the conversation, OCASIO asked SAEZ the price for a "zip of hard," and they discussed the price. OCASIO said, "I'mma give you $600." SAEZ responded that he could go to OCASIO's "house."

129. Based on training and experience, I believe that when OCASIO asked SAEZ for a "zip of hard," he was asking SAEZ for an ounce of crack cocaine, which is cocaine in a solid, free base form. I further believe that OCASIO offered to buy an ounce of crack cocaine from SAEZ for $600.

47

130.    Later that day, on October 27, at approximately 12:22 p.m., investigators observed SAEZ's Acura MDX, park in front of 13 Stoneland Road, Worcester, Massachusetts. As described above, investigators believe 13 Stoneland Street to be a stash location used by the SAEZ DTO. Investigators observed SAEZ on covert surveillance video walking onto the property at 13 Stoneland Road. At approximately 12:26 p.m., OCASIO, using Target Telephone 4, called SAEZ at Target Telephone 1 (Session 72) to tell SAEZ that he had arrived home.

131.    At approximately 12:30 p.m., investigators observed SAEZ on covert surveillance camera exiting 13 Stoneland Road and walking to his vehicle. SAEZ drove to OCASIO's residence at 328 Greenwood Street, arriving at approximately 12:41 p.m. Investigators observed SAEZ exit his vehicle and walk towards OCASIO's apartment. At approximately 1:03 p.m., investigators observed SAEZ exit OCASIO's apartment building and drive away in his vehicle. Based on training and experience, this surveillance, and the communications described above, I believe that SAEZ retrieved an ounce of crack cocaine from the DTO's stash house at 13 Stoneland Road and then sold it to OCASIO at 328 Greenwood Street for $600.

### f.    On October 28, 2025, SAEZ and RIVERA RODRIGUEZ Discussed Narcotics Packages and Coordinated a Meeting with a Narcotics Distributor

132.    The following day, on October 28, 2025, at approximately 9:24 a.m., investigators observed on covert surveillance camera a black SUV drive onto Draper Street and park across from 3 Draper Street—where the Sixth 3 Draper Street Package was delivered. Investigators observed an unknown male exit the vehicle and walk towards 3 Draper Street. At approximately 9:26 a.m., investigators observed SAEZ's Acura MDX vehicle park in front of 3 Draper Street. At approximately 9:41 a.m., investigators observed SAEZ's vehicle depart the area.

133.    Later that day, at approximately 4:42 p.m., SAEZ, using Target Telephone 1, received an incoming call from RIVERA RODRIGUEZ at Target Telephone 3 (Session 93).

48

During the conversation, RIVERA RODRIGUEZ and SAEZ discussed narcotics packages.

Below, I include an excerpt of the conversation:

| | |
|---|---|
| RIVERA RODRIGUEZ: | Listen, did you go down to Worcester? |
| SAEZ: | Mm-hmm. |
| RIVERA RODRIGUEZ: | So, did you open something up? Do you have some of that, from the 14? |
| SAEZ: | I have some at the garage, I think.  I have to check it now.  I have not opened any of them, but … I have some there. |
| RIVERA RODRIGUEZ: | But, it is not powder? |
| SAEZ: | No, I was able to get a little bit. |
| RIVERA RODRIGUEZ: | Yeah, because . . . the one you gave me, the last one you gave me was bad. |
| SAEZ: | The last one? |
| RIVERA RODRIGUEZ: | Yeah, he told me it was not that strong . . . you do not care. |
| SAEZ: | Nah, that is all in the head.  That is all mental. |
| RIVERA RODRIGUEZ: | It is not mental, fucker. |
| SAEZ: | But, I gave it to you complete; the solid one. |
| RIVERA RODRIGUEZ: | Yeah, but he told me that. |
| SAEZ: | Nah, that is all in his head. |
| RIVERA RODRIGUEZ: | He told me that he was going to be in Worcester at 5:00, if you think you can be there at 5:00. |
| SAEZ: | Yeah, but hold on . . . if I send you an address, do you think he can go there? Because I am taking care of the SUV's things. |
| RIVERA RODRIGUEZ: | Of course he will be there. |
| SAEZ: | Okay, all set. |

134.    Based on experience and training, the totality of the circumstances, which includes SAEZ's role in the DTO, his presence on Draper Street after the delivery of a suspected drug package, and the substance of his conversation with RIVERA RODRIGUEZ, I believe that SAEZ picked up the Sixth 3 Draper Street package.

135.    Specifically, I believe that when RIVERA RODRIGUEZ asked SAEZ if he went to Worcester and "opened something up," he was referring to 3 Draper Street in Worcester and to opening a drug package.  Similarly, based on training and experience, I believe that when RIVERA RODRIGUEZ asked SAEZ if the contents are "powder" and told SAEZ the last one was "bad,"

and when SAEZ stated that he gave a "complete" "solid one" to RIVERA RODRIGUEZ, RIVERA RODRIGUEZ and SAEZ were referring to the form, consistency, and potency of cocaine.

136.    I further believe that RIVERA RODRIGUEZ arranged for SAEZ to meet with a third party who "was going to be in Worcester at 5:00" and who was dissatisfied with the quality of the drugs the SAEZ DTO gave him.  Specifically, at approximately 4:50 p.m., investigators saw SAEZ walk up the left walkway of 13 Stoneland Road at 4:56 p.m.  Investigators then saw SAEZ walk back out from the rear of the building.  As mentioned above, the garage behind 13 Stoneland Street is a stash location of the SAEZ DTO and, based on the brief visit to this location, I believe that SAEZ  picked up narcotics for the meeting in Worcester.

137.    At approximately 5:12 p.m., SAEZ and MENDEZ were inside Gerardi's Service Center, at 1123 Pleasant Street in Worcester, presumably "taking care of the SUV's things," as SAEZ said (*e.g.*, car maintenance).   At approximately 6:14 p.m., SAEZ, using Target Telephone 1, received an incoming call from RIVERA RODRIGUEZ at Target Telephone 3 (Call Session 96), and RIVERA RODRIGUEZ stated that the "young guy" would be there in 15 minutes.  Tolls records show that Target Telephone 3 was in contact with phone number (321) 367-2552 four times between 6:06 p.m. and 6:15 p.m.  Subscriber records show that the -2552 number is subscribed to Subject 3, an individual known to the government.  Accordingly, I believe that the "young guy" was Subject 3.

138.    At approximately 6:30 p.m., SAEZ inspected the undercarriage of his vehicle and found the two GPS devices investigators had installed on his vehicle.

139.    At approximately 7:08 p.m., while SAEZ and MENDEZ appeared to be getting ready to leave Gerardi's, investigators observed SAEZ walk over to a vehicle that had just pulled up to the front of Gerardi's.  That vehicle is registered to Subject 3.  After a brief interaction, SAEZ

walked to his own vehicle and left the area.

140. Based on my training and experience and the information above, I believe that SAEZ, in coordination with RIVERA RODRIGUEZ, met with Subject 3 either to discuss narcotics trafficking, including the quality of the narcotics SAEZ was providing to Subject 3, or to provide Subject 3 with narcotics, or both.

### g. On October 29, 2025, SAEZ Warned Others About the GPS Devices

141. As mentioned above, on October 28, 2025, while working on his Ford Explorer at Gerardi's Service Center in Worcester, Massachusetts, SAEZ found the GPS trackers that had been installed on his Ford Explorer pursuant to a federal search warrant. *See* 25-mj-4408-DHH.

142. The following day, SAEZ used Target Telephone 2 to call OCASIO (Session 99). During the call, SAEZ and OCASIO discussed the GPS tracker SAEZ found. OCASIO said, "It's DEA putting GPS on you." SAEZ then told OCASIO that he would send OCASIO a picture of the GPS.

143. Based on this interception, the overall investigation, and training and experience, I believe that OCASIO suggested that DEA, and not someone else, installed the GPS devices on SAEZ's vehicle because SAEZ in fact deals in narcotics.

144. Later that day, at approximately 6:30 p.m., Subject 4, an individual known to the government, called SAEZ at Target Telephone 1 (Session 108). During the call, SAEZ indicated to Subject 4 that he had moved the drugs after finding the GPS tracker on his vehicle. Subject 4 asked, "And did you take the pizzas and move them somewhere else?" SAEZ responded, "Everything."

145. Based on training and experience, I believe that when Subject 4 asked SAEZ if he moved the "pizzas," he was referring to drugs. Based on training and experience, I know that drug

51

traffickers frequently use coded language when communicating with each other about narcotics to insulate themselves from detection by law enforcement.

**h. On October 30 and November 1, 2025, SAEZ Distributed Narcotics to BANDILLA**

146.    On October 30, 2025, at approximately 2:09 p.m., SAEZ, using Target Telephone 1, received an incoming call from BANDILLA, using phone number (508)-963-3235 (the "BANDILLA-3235 Phone") (Session number 117).  During the call, BANDILLA asked SAEZ to drop off drugs in BANDILLA's vehicle.  BANDILLA said, "One of them glass things," and SAEZ responded, "I got you."  BANDILLA then said, "But you don't have to roll up to my house.  You can leave it . . . under the driver's seat."  SAEZ responded, "Alright, I got you."

147.    Based on training and experience, I believe that when BANDILLA asked SAEZ for "glass," he was referring to crystal methamphetamine.  I know from training and experience that "glass" is a street name for methamphetamine when it is in a smokable, crystalline form.  Based on training and experience, I know it is common for drug traffickers to leave drugs at secret locations for another person to pick up later, which allows both parties to transfer the drugs without meeting in person.

148.    On November 1, 2025, at approximately 1:34 p.m., SAEZ, used Target Telephone 1 to make an outgoing call to BANDILLA on the BANDILLA-3235 Phone (Session 156).  During the call, SAEZ confirmed to BANDILLA, "It's inside the seat . . . the driver's side."  Based on training and experience, the prior call between SAEZ and BANDILLA, and the information above, I believe that SAEZ confirmed that he made the drug drop as the two of them had agreed.

### i. On October 31, 2025, SAEZ and Other Target Subjects Coordinated the Distribution and Storage of Four Kilograms of Cocaine

i. On October 31, 2025, RIVERA RODRIGUEZ and ██████████████ Mailed a Narcotics Package from Puerto Rico to Massachusetts

149.    Investigators learned of another suspected drug package inbound from Puerto Rico to 19 Auburn Street, one of the addresses used by the SAEZ DTO. This package, hereinafter the "Sixth 19 Auburn Street Package," was identified as USPS Priority Mail package (Tracking # 9505 5103 3666 5304 8794 70), sent on October 31, 2025, weighing 12 pounds, 7 ounces, postage $62.80. The sender was handwritten as "Amanda Rivera 99 Callebailen Dorado P.R. #00646." and the recipient as "Carlos Rivera 19 Auburn St. Worcester MA #01605." The "19" in the handwritten delivery address could also be read as a "29." Based on experience and training, because the DTO has previously repeatedly mailed drug packages to 19 Auburn Street, I believe that the October 31 Package was intended for that address. Further, based on training and experience, the fact that the package originated in Puerto Rico, had a handwritten sender and addressee information, was similar in size to other intercepted drug packages, had postage paid for in cash, I believe that each this package contained narcotics.

150.    On October 31, 2025, the same day the Sixth 19 Auburn Street Package was mailed, at approximately 1:24 p.m., SAEZ, using Target Telephone 1, made an outgoing call to RIVERA RODRIGUEZ at Target Telephone 3 (Session 132). During the call, SAEZ and RIVERA RODRIGUEZ discussed the shipment of a package earlier that day. SAEZ asked RIVERA RODRIGUEZ, "Did you send that yet?" RIVERA RODRIGUEZ responded, "Yes, it supposedly arrives on Wednesday."

151.    Based on training and experience, this conversation, the timing of the shipment of the package, and RIVERA RODRIGUEZ's social media posts indicating he was in Puerto Rico, I

believe that RIVERA RODRIGUEZ was in Puerto Rico during this conversation and that RIVERA RODRIGUEZ and SAEZ were discussing the shipment of a drug package to 19 Auburn Street.

152.   Surveillance footage from the Toa Baja Post Office in Puerto Rico further shows that ███████████ shipped the Sixth 19 Auburn Street Package.   ███████████



███████████ ███████████ then sent RIVERA RODRIGUEZ a photo of the Sixth 19 Auburn Street Package, ███████████████████████████   Based on training and experience and the information above, I believe that ███████████ mailed the Sixth 19 Auburn Street Package together with and on behalf of RIVERA RODRIGUEZ.

ii.   The Seizure of the Sixth 19 Auburn Street Package

153.   Although the handwritten address was 19 or 29 Auburn Street in Worcester, the official USPS mailing label affixed to the Sixth 19 Auburn Street Package listed the delivery address as "29 AMESBURY ST WORCESTER MA 01605-2001." Investigators are aware that 29 Auburn Street in Worcester is not a deliverable address. Accordingly, I believe that, potentially due to the ambiguous handwritten delivery address, the delivery address inadvertently populated as "29 Amesbury Street" and that ███████████ confirmed the wrong address and agreed to send the parcel to 29 Amesbury Street in Worcester in error.

154.   After investigators identified the Sixth 19 Auburn Street Package, they removed the package from the mail stream on November 3, 2025, and maintained it at a secure facility.

155.   On November 3, 2025, at approximately 10:33 a.m., OCASIO used Target Telephone 4 to call SAEZ at Target Telephone 1 to tell SAEZ that OCASIO spoke to the USPS

carrier and that the package they expected, presumably the Sixth 19 Auburn Street Package, had not arrived. Consistent with the USPS label containing an incorrect address (29 Amesbury Street), SAEZ responded that the USPS tracker indicated the package would be returned to the sender because the address for the package was "wrong."

156. On November 4, 2025, Magistrate Judge Hennessy issued a warrant to search the Sixth 19 Auburn Street Package. *See* 25-mj-4518-DHH. On November 5, 2025, investigators searched the Sixth 19 Auburn Street Package. The package contained four brick-shaped objects of a solid white powdery substance wrapped in a clear plastic wrapping, dryer sheets, and carbon paper. The substance weighed 4,491 grams, with packaging, and it field tested positive for the presence of cocaine. Based on training and experience, the field test results, the appearance of the substance, including the fact that the substance was packaged like prior cocaine packages shipped by the SAEZ DTO, I believe the substance in the Sixth 19 Auburn Street Package to be cocaine. The substance was transferred to the DEA Northeast Regional Laboratory for further testing and that testing is pending.

157. After investigators seized the package, SAEZ and OCASIO had further conversations about it. For example, on November 5, 2025, SAEZ, using Target Telephone 1 told OCASIO that he believes "Carlos" told USPS "that the package is not his" (Session 240).

**j. On November 12, 2025, SAEZ Distributed Narcotics to BANDILLA**

158. On November 12, 2025, SAEZ arranged the time and place to deliver narcotics to BANDILLA. Specifically, at approximately 9:29 a.m., SAEZ used Target Telephone 1 to call BANDILLA at the BANDILLA-3235 Phone (Session 335). BANDILLA told SAEZ, "I need 50," meaning 50 grams of narcotics, and SAEZ responded, "I got you." SAEZ then agreed to call BANDILLA when SAEZ was on his way to deliver the narcotics.

159.    At approximately 6:12 p.m., BANDILLA again called SAEZ at Target Telephone 1 (Session 347).   SAEZ stated that he was "on [his] way" to the "Applebee's on Park Avenue" and told BANDILLA to "just leave the car open" so he could "drop it inside the car."   As mentioned above, SAEZ had previously delivered drugs to BANDILLA by leaving the drugs in BANDILLA's car.  Based on the information above and my training and experience, I believe that when SAEZ said he would "drop it," SAEZ meant that he would leave the narcotics BANDILLA had requested in BANDILLA's vehicle.

160.    At approximately 7:05, SAEZ used the Target Telephone 1 to call BANDILLA at the BANDILLA-3235 Phone (Session 350).  During this call, BANDILLA told SAEZ to put "it" in the "cupholder."

161.    At approximately 7:07 p.m., investigators observed SAEZ's Ford Explorer arrive at the Applebee's located at 632 Park Avenue, Worcester, Massachusetts, and park next to a white GMC Yukon.  Investigators then observed SAEZ exit the Ford Explorer, briefly enter the white GMC Yukon, return to the Ford Explorer, and drive away from the area.  Based on the information above, I believe that SAEZ dropped off 50 grams narcotics inside BANDILLA's vehicle.

**k.    On November 29, 2025, RIVERA RODRIGUEZ, MARTINEZ MENDEZ, and HERNANDEZ RIOS Coordinated the Distribution of a Suspected Narcotics Package**

162.    On November 28, 2025, at approximately 3:01 p.m., RIVERA RODRIGUEZ, using Target Telephone 3, made an outgoing call to MARTINEZ MENDEZ on Target Telephone 5 (Session 350).  During the call, RIVERA RODRIGUEZ and MARTINEZ MENDEZ discussed the shipment of a drug package.  Specifically, RIVERA RODRIGUEZ stated that he had a "package ready" and that he would "send it" if the post office was open.  MARTINEZ MENDEZ responded that it's "too risky . . . to get caught over a package."  Based on training and experience,

56

I believe that RIVERA RODRIGUEZ was referring to a narcotics package and that MARTINEZ MENDEZ thought it was risky for RIVERA RODRIGUEZ to mail the package himself, as opposed to sending someone to ship the package, because the package contained narcotics. RIVERA RODRIGUEZ responded that the package was "low key" and "not even heavy" because "there's only one in there." Based on my training and experience, RIVERA RODRIGUEZ meant that law enforcement would not detect the package and that it contained "only one" kilogram of narcotics.

163. RIVERA RODRIGUEZ ultimately did not ship the package himself. According to surveillance footage from the Toa Baja Post Office in Puerto Rico he instead sent HERNANDEZ RIOS to mail the package.

164. On November 30, 2025, at approximately 1:08 p.m., RIVERA RODRIGUEZ, using Target Telephone 3, received an incoming call from MARTINEZ MENDEZ on Target Telephone 5 (Session 422). During the call, RIVERA RODRIGUEZ and MARTINEZ MENDEZ discussed an inbound drug package destined for Massachusetts. MARTINEZ MENDEZ asked, "What does the tracking tell you?" And RIVERA RODRIGUEZ responded, "That it arrives on Fri—on Thursday."

165. Investigators discovered a suspected drug package had been mailed from Puerto Rico to 3 Draper Street, Apartment 1, Worcester, Massachusetts #01604, RIVERA RODRIGUEZ's residence. The package, hereinafter the "Seventh 3 Draper Street Package," contained the typical indicia of packages containing narcotics discussed above, and was identified as follows: USPS Priority Mail (Tracking #9505 5114 5584 5333 6672 98), mailed on November 29, 2025, weighing 4 pounds and 10 ounces, addressed to Nicole Rivera, 3 Draper Street, with sender information Amanda Rivera, 26 Calle Lydia Central, Toa Baja, P.R. #00949. Based on

57

public records, the listed recipient is fictitious, and no known individual named "Nicole Rivera" is associated with 3 Draper Street, Apartment 1, Worcester, Massachusetts. Based on my training and experience, the fact the package originated in Puerto Rico, had a fictitious recipient name, had handwritten sender and addressee information, and was similar in size to other intercepted drug packages, I believe the Seventh 3 Draper Street package contained cocaine.

166.    On December 1, 2025, investigators learned the suspected drug package was set for delivery that same day. At approximately 9:00 a.m., investigators set up surveillance on 3 Draper Street in anticipation of the delivery of the suspected drug package. At approximately 9:26 a.m., investigators observed the postal truck approach Draper Street. At approximately 9:31 a.m., investigators observed the postal carrier carrying the package up the stairs at 3 Draper Street via covert surveillance video. Almost immediately thereafter, investigators observed the postal carrier return to the postal truck, without the suspected drug package, and drive away. According to USPS business records, the suspected drug package was marked delivered at 9:31 a.m. At approximately 10:14 a.m., investigators observed a Honda vehicle pull out of the driveway and park on the street of 3 Draper Street. Investigators observed RIVERA RODRIGUEZ exit the vehicle and walk toward 3 Draper Street.[12]    At approximately 10:17 a.m., investigators observed RIVERA RODRIGUEZ re-enter the Honda and park in the driveway of 3 Draper Street.

167.    Based on my training and experience, I believe that RIVERA RODRIGUEZ and MARTINEZ MENDEZ arranged for the Seventh 3 Draper Street Package to be shipped from Puerto Rico to RIVERA RODRIGUEZ's residence at 3 Draper Street. Based on USPS

---

[12] Based on location information for Target Telephone 3, I believe that RIVERA RODRIGUEZ returned from Puerto Rico on Saturday, November 29, 2025, and was residing at 3 Draper Street.

surveillance footage, I believe HERNANDEZ RIOS delivered the Seventh 3 Draper Street Package to the post office in Puerto Rico.

l. **On December 3, 2025, SAEZ Arranged a Narcotics Deal with BANDILLA and Coordinated with OCASIO, RIVERA RODRIGUEZ, and HERRING for the Distribution of Narcotics**

i. On December 1, 2025, BANDILLA Requested Narcotics from SAEZ

168.    On December 1, 2025, at approximately 2:27 p.m., SAEZ, using Target Telephone 1, received an incoming call from BANDILLA on the BANDILLA-3235 Phone (Session 606). During the conversation, SAEZ told BANDILLA that he is "waiting on" "that other shit" BANDILLA had asked for, which "should be here this week."   BANDILLA then asked SAEZ for "glass" and when SAEZ offered to bring the "glass" to BANDILLA, BANDILLA responded, "He don't want one without the other."  Based on training and experience, I know that "glass" is a street name for methamphetamine, and that drug users often mix powerful stimulants like methamphetamine and cocaine, with depressants, such as fentanyl, to achieve a unique and intense high while also attempting to minimize the unwanted side effects of each individual drug. Accordingly, based on training and experience and the information above, I believe that SAEZ told BANDILLA that he is waiting on narcotics that will be arriving within the week and that BANDILLA asked SAEZ for methamphetamine ("glass") and the other narcotic SAEZ was waiting for, possibly fentanyl.

169.    Two days later, on December 3, 2025, at approximately 11:00 a.m., SAEZ, using Target Telephone 1, received an incoming call from BANDILLA on the BANDILLA-3235 Phone (Session 630).  During the conversation, BANDILLA told SAEZ, "Make sure you got the glass and the uh, 50 of the other," to which SAEZ responded, "Yeah, I got you."  Based on my training and experience, "50 of the other," refers to 50 grams of another narcotic, likely the "other" narcotic

59

they had discussed two days prior. Accordingly, I believe that SAEZ agreed to deliver methamphetamine and 50 grams of another narcotic to BANDILLA, possibly fentanyl.

ii.    The Same Day, SAEZ Coordinated the Collection and Distribution of a Cocaine Package with RIVERA RODRIGUEZ, OCASIO, and HERRING

170.    A few hours later, at approximately 2:56 p.m., SAEZ, using Target Telephone 1, received an incoming call from RIVERA RODRIGUEZ on Target Telephone 3 (Session 635). During the conversation, RIVERA RODRIGUEZ told SAEZ that ▬▬▬▬▬▬▬▬ was not answering his calls. SAEZ offered to call ▬▬▬▬▬▬▬ and ask him to call RIVERA RODRIGUEZ back. SAEZ asked RIVERA RODRIGUEZ if he should tell ▬▬▬▬ ▬▬▬▬ to "go get it," to which RIVERA RODRIGUEZ responded, "If he answers, tell him." Based on my investigation, as well as my training and experience, I believe that when SAEZ asked RIVERA RODRIGUEZ if ▬▬▬▬▬▬▬ should "go get it," he was referring to asking ▬▬▬▬▬▬ to pick up the Seventh 3 Draper Street Package, which was delivered on December 1, 2025.

171.    Later that day, at approximately 4:24 p.m., SAEZ, using Target Telephone 1, received an incoming call from OCASIO on Target Telephone 4 (Session 636). During the conversation, SAEZ told OCASIO he recently received cocaine. Specifically, SAEZ said, "Shit, I just got good today." OCASIO then asked, "The white girl?" SAEZ responded, "Um-hum. And for the other, I should be good tonight." Based on my training and experience, I believe that when SAEZ told OCASIO he "just got good today," he was telling OCASIO that he finally has drugs available, and that when OCASIO asked if SAEZ has "the white girl," he was asking SAEZ if he had cocaine. I further believe that SAEZ told OCASIO about another narcotic ("the other"), which should also be available that night. Based on my training and experience, and SAEZ's

conversation with BANDILLA earlier that day, I believe that SAEZ was talking about fentanyl—the "other" narcotic SAEZ possibly agreed to provide to BANDILLA.

172.    Later that day, at approximately 6:04 p.m., SAEZ, using Target Telephone 1, received an incoming call from OCASIO on Target Telephone 4 (Session 648), during which OCASIO asked for cocaine.  During the conversation, OCASIO asked SAEZ for "28" of "that hot body."  Based on my training and experience, I believe that OCASIO was asking for 28 grams (one ounce) of cocaine.  SAEZ responded, "I'm calling him, the nigga's just . . . he must be sleeping or something 'cause that arrived . . . this morning."  During the conversation, SAEZ makes clear that he is talking about "Chris."  Based on my training and experience and the information above, I believe that SAEZ told OCASIO that RIVERA RODRIGUEZ, whose first name is Chris, was not answering his calls, but that the cocaine ("that") had arrived that morning.[13]

173.    Shortly thereafter, at approximately 6:13 p.m., SAEZ made contact with RIVERA RODRIGUEZ.  SAEZ, using Target Telephone 1, received an incoming call from RIVERA RODRIGUEZ on Target Telephone 3 (Session 649).  During the call, SAEZ asked RIVERA RODRIGUEZ if he should "continue heading over there," and RIVERA RODRIGUEZ told SAEZ, "yes, go to the house; to the new house."  Based on training and experience and the information above, including months of surveillance on SAEZ, I know that SAEZ typically meets DTO members after the delivery of drug packages and transports the contents of the drug package to the DTO's stash location.  I further believe that SAEZ traveled to RIVERA RODRIGUEZ's

---

[13] The Seventh 3 Draper Street Package arrived on December 1, 2025.  I believe SAEZ mistakenly believed that the package had arrived on December 3, 2025.  As discussed above, on November 30, 2025, RIVERA RODRIGUEZ told MARTINEZ MENDEZ that the tracking said that the package would arrive Thursday, meaning December 4, 2025.  On December 5, 2025, MARTINEZ MENDEZ asked RIVERA RODRIGUEZ (Session 651), "Did that arrive yet?" RIVERA RODRIGUEZ responded, "I sent it on Saturday, it arrived Monday."

house to retrieve the narcotics from the Seventh 3 Draper Street Package, which likely contained cocaine.

174.    Later that day, SAEZ told HERRING that the drugs had arrived.  At approximately 8:32 p.m., SAEZ used Target Telephone 1 to call HERRING at phone number (774)-446-5070 (the "HERRING-5070 Phone") (Session 658).  When HERRING asked, "What's cooking?" SAEZ responded, "Hot and popping, baby.  Hot and popping."  HERRING seemed confused and SAEZ continued to repeat, "hot and popping."  Eventually HERRING responded, "Oh shit. Alleluia!" HERRING then said, "You're an asshole, 'cause you said you was gonna call me when you got that sfigitty [ph]."  HERRING then told SAEZ that HERRING was "coming over there" and that he would be there in "10 minutes."  Based on training and experience and the information above, I believe that, after SAEZ collected the narcotics from RIVERA RODRIGUEZ, SAEZ called HERRING to let him know that he now had narcotics to distribute and agreed to meet with HERRING to provide him with narcotics.  I further believe that HERRING works with SAEZ to distribute the narcotics the DTO imports from Puerto Rico.

### iii.    Later that Day, SAEZ's Delivered Narcotics to BANDILLA

175.    As described above, at the beginning of the day, SAEZ had agreed to deliver methamphetamine ("glass") and "50" grams of another narcotic to BANDILLA.  At approximately 9:38 p.m., presumably after meeting with HERRING, SAEZ, using Target Telephone 1, made an outgoing call to BANDILLA on the BANDILLA-3235 Phone (Session 660), and asked if he should enter the house "through the garage or through the front door," to which BANDILLA responded, "just come through the front door."  While conducting surveillance, investigators observed SAEZ walk into BANDILLA's residence, located at 109 Dunnbrook Road, East Brookfield, Massachusetts, through his front door shortly after this phone call.  Based on my

training and experience and the information above, including the fact that SAEZ had agreed to deliver narcotics to BANDILLA earlier that day, that BANDILLA asked SAEZ to "make sure" he has both narcotics, and the surveillance above, I believe that SAEZ delivered methamphetamine and 50 grams of another narcotic, possibly fentanyl, to BANDILLA.[14]

### m. On December 4, 2025, the Worcester Police Department Arrested OCASIO on Narcotics Charges

176.   On December 4, 2025, the Worcester Police Department (WPD) Neighborhood Response Team observed OCASIO hand suspected crack cocaine to another individual. Specifically, while OCASIO was sitting in the driver's seat, the individual entered OCASIO's front passenger seat and then shuffled in the space between the door and the seat. The individual then handed OCASIO U.S. currency and OCASIO handed the individual a small item, which the individual then put into his front right pocket. The individual then exited OCASIO's vehicle and walked away. Investigators approached the individual and found in the individual's front right pocket a glassine baggy containing a white hard rock substance believed to be crack cocaine. OCASIO was then placed under arrest.

177.   Investigators obtained a state warrant to search OCASIO's vehicle. Inside, they found 35 individually packaged plastic bags. Based on the appearance of the contents of the bags and investigators' training and experience, 22 of the 35 bags were believed to contain fentanyl

---

[14] Further, on December 9, 2025, at approximately 8:43 p.m., SAEZ, using Target Telephone 1, received an incoming call from BANDILLA on the BANDILLA-3235 Phone (Session 795). During the call, BANDILLA asked for "another 50," to which SAEZ responded, "I got you." BANDILLA's reference to "another" 50 indicates to investigators that SAEZ in fact provided BANDILLA with 50 grams previously.

weighing approximately 17.4 grams. The remaining 13 bags were believed to contain cocaine weighing approximately 11.7 grams. WPD processed the substances and testing is pending.

178. After OCASIO was released on personal recognizance, SAEZ, using Target Telephone 1, had a conversation about OCASIO's arrest with HERRING, on the HERRING-5070 Phone (Session 682). HERRING told SAEZ, "So it was just a transaction . . . It's nothing major. Obviously Chino didn't have…you know what I mean?" Based on prior interceptions and the events they discussed, I know that SAEZ and others call OCASIO "Chino." Further, based on training and experience, I believe that HERRING is not concerned about OCASIO's arrest because OCASIO was caught with only street-level transaction quantities, and not with a larger package of narcotics (*i.e.*, something "major"). I also further believe that HERRING is aware of the DTO's larger narcotics packages.

### n. On December 13, 2025, HERNANDEZ RIOS Shipped a Suspected Narcotics Package on RIVERA RODRIGUEZ's Behalf

178. On December 14, 2025, investigators identified another suspected narcotics package inbound from Puerto Rico to an address in Worcester County used by the SAEZ DTO. The package, hereinafter the First 6 Wachusett Street Package, contained the typical indicia of packages containing narcotics discussed *supra*, and was identified as follows: USPS Priority Mail, tracking # 9505 5114 5584 5347 6727 83, mailed on December 13, 2025, at approximately 11:49 a.m., weighing 4 pounds and nine ounces, addressed to Felix Mendez, "6 Wachusett St Apt 7B Worcester, ma 01609," with sender information "Kiara Mendez, 26 Calle Lydia Central Toa baja, P.R. #00949." This return address is the same return address used for the Seventh 3 Draper Street package.[15] Based on my training and experience, the fact the package originated in Puerto Rico,

---

[15] Investigators had previously identified another suspicious package addressed to 6 Wachusett Street in September 2025 which bore the typical indicia of packages containing narcotics discussed *supra*. That September 2025 package, USPS Priority Mail (Tracking # 9505

had sender and addressee information associated with prior suspected drug packages, had handwritten sender and addressee information, and was similar in size to other intercepted drug packages, I believe the First 6 Wachusett Street package contained cocaine.

179.   Surveillance footage from the Toa Baja Post Office in Puerto Rico showed that HERNANDEZ RIOS shipped the First 6 Wachusett Street Package.   As described above, HERNANDEZ RIOS had previously shipped the Sixth 3 Draper Street Package and the Seventh 3 Draper Street Package.

180.   A review of RIVERA RODRIGUEZ's Instagram messages with HERNANDEZ RIOS (username "vianeshla") showed that they discussed the First 6 Wachusett Street Package. Specifically, on December 13, 2025, HERNANEZ RIOS asked RIVERA RODRIGUEZ, "What do you need?" RIVERA RODRIGUEZ responded, "For the mail.  I can't get anyone else.  Please." HERNANDEZ RIOS responded, "You haven't looked for anyone. . . .  I think so because since yesterday you're asking me." HERNANDEZ RIOS then added, "You know that I don't like it." RIVERA RODRIGUEZ then insisted that he unsuccessfully called two cousins of "Jan," whom, based on the name, I believe to be MARTINEZ MENDEZ. HERNANDEZ RIOS then agreed to go to the mail to drop off the package. Based on my training and experience and the information above, including the fact that HERNANDEZ RIOS has mailed suspected narcotics packages on three separate occasions, that she was hesitant to mail the package, and that she apparently knew MARTINEZ MENDEZ (whose first name is "Jan"), I believe that HERNANDEZ RIOS is aware that the packages she sends on behalf of RIVERA RODRIGUEZ contain narcotics.

---

5103 3657 5251 6879 15), was also addressed to "Felix Mendez" at that same address.  The sender was listed as "Luis Mendez 42 Calle Amparo Catano PR #00962." An investigator, acting in an undercover capacity as a USPS mail carrier, delivered this package to a common area inside 6 Wachusett Street.  Approximately two hours later, investigators confirmed that the package was no longer in the common area.

181.    As described above, the First 6 Wachusett Street Package was dropped off by the sender at approximately 11:49 a.m.  At approximately 11:52 a.m., HERNANDEZ RIOS messaged RIVERA RODRIGUEZ on Instagram and stated, "You had 40 leftover. . . . And yes I checked that the address was correct."   Based on training and experience and the information above, including the timing of the shipment and the messages, I believe that HERNANDEZ RIOS shipped the First 6 Wachusett Package knowing that it contained narcotics.

**o.  On December 23, 2025, MARTINEZ MENDEZ and TORRES Sought Narcotics Suppliers for the DTO**

182.    On December 23, 2025, at approximately 5:47 p.m., MARTINEZ MENDEZ, using Target Telephone 5, received an incoming call from TORRES on Target Telephone 7 (Session 50).  During the call, TORRES offered to broker a transaction for narcotics between MARTINEZ MENDEZ and a new supplier.  Specifically, TORRES stated, "The price is 12 but they'll set it up wherever you want . . . Wherever you want it, wherever you want to put it."   MARTINEZ MENDEZ responded, "That interests me."  TORRES then said, "Then, the price can get better if it's a lot, if it's a lot more."

183.    Based on my training and experience, I believe that when TORRES said, "the price is 12," he was telling MARTINEZ MENDEZ the price for a kilogram of narcotics was $12,000.  When TORRES told MARTINEZ MENDEZ that "they'll set it up wherever you want," he was telling MARTINEZ MENDEZ the supplier will arrange transportation of the narcotics to any destination MARTINEZ MENDEZ wants.  Based on my training and experience, including the prices discussed, I believe MARTINEZ MENDEZ and TORRES were talking about cocaine.

184.    Later in the conversation, TORRES and MARTINEZ MENDEZ discussed the purity of the cocaine the supplier could provide, "80%" and "120%."  Based on my training and experience, I believe that these figures refer to different purities of cocaine.  MARTINEZ inquired,

66

"is it cut or pure," and TORRES responded that "it's pure." Based on training and experience, I believe that MARTINEZ MENDEZ and TORRES were talking about the purity of the cocaine, which refers to the degree to which the cocaine is free from contaminants, impurities, or adulterants.

185.    Later in the conversation, MARTINEZ MENDEZ expressed concern about whether the supplier would actually send the drugs. He said, "But the thing is that we can't give them the ticket and then the thing doesn't arrive over there." Based on training and experience, I know that "ticket" is common street slang for money. In response, TORRES reassured MARTINEZ MENDEZ that TORRES knows the supplier. TORRES said, "[R]emember that here, here, here I do know the people here, you understand? That can't happen."

186.    In the same conversation TORRES told MARTINEZ MENDEZ, "I was calling you for that, so that you knew that I was making moves." Based on training and experience, I believe that MARTINEZ MENDEZ and TORRES may have had discussions about TORRES brokering a transaction with the new supplier before and that TORRES wanted to reassure MARTINEZ MENDEZ that he was making headway. TORRES told MARTINEZ MENDEZ that he met with the supplier and that the supplier showed TORRES a unit of narcotics. TORRES said, "Because I told them I wasn't joking, that this…like not to be playing with me or anything. They put it on the table for me like, 'here you go, 'pam!'" TORRES also explained that he has negotiated prices on MARTINEZ MENDEZ's behalf. TORRES said, "I'm calling you so you know. I'm working on it and I told him, 'truly, I think it's high because they work with it at 10-2,'" meaning that he negotiated the price by telling the supplier that the SAEZ DTO is paying $10,200 per kilogram elsewhere.

187.    Further, during the conversation, TORRES asked MARTINEZ MENDEZ how the SAEZ DTO "work with it," meaning the narcotics.  MARTINEZ MENDEZ responded, "It depends, remember that we break it while it is pure, but the client, not the one who is going to buy it from you, but the other person who is going to sell it to, or whatever he wants to do with it, if he can't have the outcome that he wants . . . ."  TORRES then responded, "Of course."  Based on training and experience, I believe that MARTINEZ MENDEZ explained to TORRES that the SAEZ DTO sells narcotics to other distributors who then distribute the narcotics to drug consumers.

### p.   On January 5, 2026, SAEZ and MENDEZ Arranged Narcotics Transactions with HERRING and BANDILLA

188.    On January 5, at 12:50 p.m., SAEZ, using Target Telephone 1 made an outgoing call to HERRING. During the call, SAEZ asked HERRING when HERRING wanted to see him. HERRING asked SAEZ to call him when SAEZ went to Worcester.

189.    At 2:34 p.m., SAEZ, using Target Telephone 1, received an incoming call from BANDILLA. BANDILLA stated that an unknown third party ("UTP") wanted "them glass things," which, as noted above, I believe to refer to methamphetamine.  SAEZ stated he could bring it to BANDILLA that day.  BANDILLA said that people are "hounding" the UTP.  Based on training and experience, I believe that BANDILLA meant that the UTP is facing significant demand from clients for methamphetamine.

190.    At approximately 8:07 p.m., investigators observed, via covert surveillance video, a vehicle that resembled MENDEZ's black Acura MDX, park at the curb across from 13 Stoneland Road.  At 8:07 p.m., a figure consistent with SAEZ exited the passenger side of this vehicle and walked up the driveway to 13 Stoneland Road toward the rear of the property.  The lights on the vehicle remained on during entire time at Stoneland Road.  At 8:18 p.m., this same figure walked

down the driveway, across the street, and entered the passenger side of that same Acura. The vehicle departed the area at 8:19 p.m.

191.    At 8:09 p.m., before the figure returned to the black Acura MDX, SAEZ used Target Telephone 1 to call HERRING. SAEZ asked HERRING if HERRING wanted SAEZ to bring HERRING "something." HERRING said he would text him what he wanted. Based on training and experience, the relationship between SAEZ and HERRING, and the information above, I believe that when SAEZ said "something," he was referring to narcotics. Later in the call, SAEZ stated that he was "at the spot getting everything ready," which I believe referred to the stash location at 13 Stoneland Road ("the spot"). Toward the end of the call, SAEZ asked MENDEZ, who appeared to be driving SAEZ around, who they should see first, BANDILLA or HERRING and MENDEZ replied that they should visit HERRING first.

192.    At 8:42 p.m., SAEZ, using Target Telephone 1, received a call from BANDILLA. SAEZ said he was on his way to BANDILLA and would be there in 27 minutes.

193.    Accordingly, based on training and experience and the information above, I believe that SAEZ agreed to deliver methamphetamine to BANDILLA and offered to bring narcotics to HERRING and that MENDEZ drove SAEZ to conduct the transactions.

### q. On January 9, 2026, SAEZ and RIVERA RODRIGUEZ Discussed the Firearms in their Possession

194.    On January 9, 2026, SAEZ, using Target Telephone 1, made an outgoing call to RIVERA RODRIGUEZ on Target Telephone 3 (Session 1569). During the call, SAEZ and RIVERA RODRIGUEZ admitted that they both own firearms. Specifically, RIVERA RODRIGUEZ told SAEZ that his "9mm stick" "doesn't have enough strength to push those bullets." SAEZ responded, "I have a 'stick' here that's 45." Based on experience and training, I

believe that RIVERA RODRIGUEZ and SAEZ were speaking about firearms, specifically a 9 millimeter ("9mm stick") and a .45 caliber firearm ("45").

    **r.   On January 9, 2026, TORRES, MARTINEZ MENDEZ, and ███████████ ███████ Coordinated Efforts to Obtain a New Narcotics Supplier**

195.    On January 9, 2026, at approximately 9:34 a.m., MARTINEZ MENDEZ, using Target Telephone 5, received an incoming call from TORRES on Target Telephone 7 (Session 2275). During the call, MARTINEZ MENDEZ and TORRES discussed contacting a source for narcotics. TORRES told MARTINEZ MENDEZ, "I'll call you so I can head over to you. And I'll call the man." Based on training and experience, when TORRES said, "I'll call the man," he was referring to his source for narcotics.

196.    Approximately two minutes later, MARTINEZ MENDEZ, using Target Telephone 5, made an outgoing call to ███████████████ on the ███████████████-9812 Phone (Session 2277). During the call, MARTINEZ MENDEZ told ███████████████ about the call he just had with TORRES. MARTINEZ MENDEZ said, "He's going to pick me up later to call those people to see what they're going to tell me and such. I'll call to see what number they're giving me to see if it hasn't gone up or down." ███████████████ responded, "Alright buddy." Based on training and experience and the timing and content of the conversation, I believe that MARTINEZ MENDEZ told ███████████████ that TORRES will pick him up and call the new supplier, and that MARTINEZ MENDEZ will try to figure out if the price (the "number") has changed ("gone up or down"). Based on the context of these conversations, I believe that TORRES intended to introduce MARTINEZ MENDEZ to a supplier for narcotics.

197.    Later that day, at approximately 6:09 p.m., MARTINEZ MENDEZ, using Target Telephone 5, made an outgoing call to TORRES on Target Telephone 7 (Session 2339). During the call, TORRES told MARTINEZ MENDEZ that his "friend called" and they agreed that

TORRES would go pick up MARTINEZ MENDEZ. Based on their earlier and subsequent conversations, I believe that TORRES's "friend" is the drug supplier he intended to introduce to MARTINEZ MENDEZ.

198.   A few minutes later, at approximately 6:18 p.m., MARTINEZ MENDEZ, using Target Telephone 5, received an incoming call from ████████████████ on the ██████████████████-9812 Phone (Session 2349). During the call, MARTINEZ MENDEZ and ██████████████ discussed pooling their money to purchase a kilogram of narcotics. Specifically, MARTINEZ MENDEZ said that TORRES called "somebody else" who said "10," meaning that TORRES called another drug supplier who offered to sell narcotics kilograms at $10,000 each.  MARTINEZ MENDEZ responded, "So let's do it." Based on training and experience and the context of these conversations, I believe that ██████████████ offered MARTINEZ MENDEZ to purchase one kilogram together and that MARTINEZ MENDEZ agreed.

199.   MARTINEZ MENDEZ then told ██████████████, "My friend is going to pick me up now to see what he's going to do . . . and if they ask me to go see it today, I'll call you to go pick that up." Based on training and experience and MARTINEZ MENDEZ's earlier conversation with TORRES, I believe that MARTINEZ MENDEZ meant that TORRES was going to pick him up and that there was a possibility that the new supplier would have the narcotics available for pickup that day.

**s.** **On January 12, 2026, SAEZ Coordinated the Distribution and Storage of a Suspected Narcotics Package with Other Target Subjects, including RIVERA RODRIGUEZ and MENDEZ**

179. Investigators learned of a suspected drug package inbound from Puerto Rico to 69 Outlook Drive, Apartment 14, an address in Worcester County used by the SAEZ DTO. This package, hereinafter the "Second 69 Outlook Drive Package," was identified as USPS Priority Mail package, tracking number 9505 5114 5581 6010 9650 44, sent on January 10, 2026, weighed approximately 4 pounds and 12 ounces and had postage paid for in cash. The sender information was handwritten as "Luis Torres P77 Calle los Vaqueros Toa Baja, PR #00949" and the addressee information was handwritten as "Santa Torres 69 Outlook Dr apt. 14 Worcester MA. #01602." A known individual named "Santa Torres" is associated with 69 Outlook Drive, Apt. 14, Worcester, Massachusetts. Based on training and experience, the fact that the package originated in Puerto Rico, had a fictitious recipient name and handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, I believe that the Second 69 Outlook Drive Package contained narcotics.

200. On January 12, 2026, at approximately 11:56 a.m., SAEZ, using Target Telephone 1, received an incoming call from RIVERA RODRIGUEZ on Target Telephone 3 (Session 1699). During the call, SAEZ and RIVERA RODRIGUEZ discussed the pending arrival of the drug package. RIVERA RODRIGUEZ said, "Wake up, buddy. It's on the street! . . . It says expected delivery." Based on the context of the conversation, I believe that RIVERA RODRIGUEZ was talking about the inbound drug package destined for 69 Outlook Drive.

201. Later that day, investigators conducted surveillance on 69 Outlook Drive in anticipation of the delivery of the suspected drug package. At approximately 1:46 p.m.,

investigators observed MENDEZ and an individual known to the government ("Subject 6") talking with the USPS carrier, who then gave the package to MENDEZ.

202.   MENDEZ handed the package to Subject 6, who then brought it into 69 Outlook Drive.   Investigators then saw MENDEZ walk inside the rear entrance to 69 Outlook Drive. Seconds later, investigators observed MENDEZ walking from the building towards her vehicle, carrying the USPS box partially concealed inside a black plastic bag. MENDEZ placed the box in her vehicle and then drove away from the area.  At approximately 1:47 p.m., SAEZ used Target Telephone 1 to call RODRIGUEZ RIVERA at Target Telephone 3 about the delivery (Session 1719).  Specifically, SAEZ told RODRIGUEZ RIVERA that the USPS carrier was going to take the box back to the USPS truck and that MENDEZ stated, "You're lucky I'm here watching because if not, he would have left a letter."

203.   Based on my training and experience and the information above, I believe that RIVERA RODRIGUEZ knew about and monitored the package because he mailed it, that the package contained narcotics, likely cocaine, that RIVERA RODRIGUEZ informed SAEZ about the package because they continued to coordinate their narcotics trafficking activities, and that MENDEZ concealed an otherwise commonplace box with a black bag and monitored the delivery of the box because she knew that the package contained narcotics.

t.   **In January 2026, SAEZ Coordinated the Distribution and Collection of Two Kilograms of Narcotics with Other Target Subjects, including MARTINEZ MENDEZ, RIVERA RODRIGUEZ, and** ▮▮▮▮▮▮▮▮▮▮

   i.   On January 12, 2025, MARTINEZ MENDEZ Requested a Drop Address from SAEZ and RIVERA RODRIGUEZ for an Upcoming Narcotics Shipment

204.   On January 12, 2026, at approximately 1:11 p.m., SAEZ, using Target Telephone 1, made an outgoing call to MARTINEZ MENDEZ on Target Telephone 5 (Session 1709).  During

73

the call, MARTINEZ MENDEZ told SAEZ he "bought one" for "9-8." Based on training and experience and the context of the conversation, I believe that MARTINEZ MENDEZ meant that he purchased one kilogram of narcotics for $9,800.

205.   MARTINEZ MENDEZ then told SAEZ that he "really need[s] the address" and that he'll "pay for it." SAEZ responded that "right now the addresses are scarce." Based on training and experience, I believe that SAEZ was telling MARTINEZ MENDEZ that there are limited drop addresses being used by the DTO in Worcester County, and that MARTINEZ MENDEZ knows this and is willing to pay for an address. During this conversation, SAEZ agreed to call RIVERA RODRIGUEZ to ask if they could "put two inside one," meaning ship their two kilograms of narcotics together to minimize suspicion and the risk of detection from law enforcement.

206.   A few minutes later, at approximately 1:18 p.m., SAEZ, using Target Telephone 1, made an outgoing call to RIVERA RODRIGUEZ on Target Telephone 3 (Session 1713). During the call, SAEZ and RIVERA RODRIGUEZ discussed the shipment of drug packages and drop addresses in Worcester County, Massachusetts. RIVERA RODRIGUEZ stated, "I can give him my friend's address, the one from Webster . . . but he'll have to pay," meaning that MARTINEZ MENDEZ would need to pay to be able to use RIVERA RODRIGUEZ's friend's address.

      ii.    On January 12, 2026, RIVERA RODRIGUEZ Asked Subject 5 to Receive MARTINEZ MENDEZ's Incoming Narcotics Package

207.   Shortly after that call, at approximately 1:39 p.m., MARTINEZ MENDEZ, using Target Telephone 5, called RIVERA RODRIGUEZ on Target Telephone 3. RIVERA RODRIGUEZ told MARTINEZ MENDEZ that they could not combine their shipments into one because RIVERA RODRIGUEZ "already sent it." RIVERA RODRIGUEZ then said, "I have . . . My friend from Webster hit me up out of nowhere, the Christian guy. 'Hi bro, I am a little bit

74

broke,' you understand? If I could help him but . . . I do not know how much he would charge me for the address." Based on the context of the conversation, I believe that RIVERA RODRIGUEZ was referring to the potential drop address in Webster he described to SAEZ earlier. MARTINEZ MENDEZ told RIVERA RODRIGUEZ to "talk to him clearly and ask how much he wants and call me." RIVERA RODRIGUEZ responded, "Alright. Let me call him." The call ended at 1:41 p.m.

208.    One minute later, at approximately 1:42 p.m., RIVERA called an individual known to the government ("Subject 5"). During the call, Subject 5 stated, "I have Thursday and Friday off. So I'm going to be home. So . . . what do you think? Those days work for you?" RIVERA RODRIGUEZ responded, "Alright. I can do it literally tomorrow then." Subject 5 then said, "So it can arrive Thursday or Friday right?" RIVERA RODRIGUEZ responded, "I was going to ask you, how much do you want for that." Subject 5 said, "maybe 5... 500 at least[.]" Based on the context of the conversation and the information above, I believe that Subject 5 agreed to receive the incoming package for $500.

209.    RIVERA RODRIGUEZ, using Target Telephone 3, then called MARTINEZ MENDEZ back on Target Telephone 5 (Session 1917) at approximately 1:44 p.m. RIVERA RODRIGUEZ said, "Look, he said that 500 . . . and that he's off Thursday and Friday . . . that he can be home all day waiting for it on Thursday and Friday," referring to Subject 5's agreement to receive the package for $500. MARTINEZ MENDEZ responded "Alright."

210.    The following day, on January 13, 2026, RIVERA RODRIGUEZ provided MARTINEZ MENDEZ with the drop address. RIVERA RODRIGUEZ, using Target Telephone 3, received an incoming call from MARTINEZ MENDEZ on Target Telephone 5 (Session 2037). During the call, RIVERA RODRIGUEZ gave MARTINEZ MENDEZ the address "40 Pleasant

St, APT 2L" in "Webster, Mass 01570." address in Worcester County, Massachusetts to send a drug package. As described above, the DTO previously used this address to ship a suspected drug package on February 24, 2025.

          iii.    <u>On January 16, 2026, ███████████████ Agreed to Pick Up the Narcotics Package from RIVERA RODRIGUEZ</u>

211.    On January 14, 2026, investigators identified a USPS package, with tracking # 9505 5114 5583 6013 8826 98, weighing 7 pounds, 8 ounces, whose sender was handwritten as "Carlos Santiago 120B Calle Ext Kennedy Dorado PR 00646" and which was addressed to "Javier Santiago 40 Pleasant St Apt 2L Webster MA 01570" (hereinafter, the "Second 40 Pleasant Street Package"). Based on the conversation described above, including the detailed street address RIVERA RODRIGUEZ provided, I believe MARTINEZ MENDEZ sent the Second 40 Pleasant Street Package and that the package contained narcotics, likely cocaine.

212.    On January 16, 2026, at approximately 10:38 a.m., MARTINEZ MENDEZ, using Target Telephone 5, called RIVERA RODRIGUEZ on the Target Telephone 3 (Session 3434). MARTINEZ MENDEZ stated, "That arrives over there today." Based upon the conversations described above, I believe that "that" refers to the Second 40 Pleasant Street Package. RIVERA RODRIGUEZ said that he would "message the young guy."

213.    Approximately one minute later, MARTINEZ MENDEZ, using Target Telephone 5, made an outgoing call to ███████████████ on the ███████████████-9812 Phone (Session 3435). During the call, MARTINEZ MENDEZ arranged for ███████ ███████ to pick up the Second 40 Pleasant Street Package from RIVERA RODRIGUEZ. MARTINEZ MENDEZ stated, "I called him. He said he would pick it up." Based on the conversation described above, I believe that MARTINEZ MENDEZ was referring to RIVERA RODRIGUEZ. ███████████████

76

Case 1:26-mj-06363-MPK   Document 8-1   Filed 04/07/26   Page 77 of 94

26-mj-6363-MPK



Based on this conversation, I believe that the Second 40 Pleasant Street Package was intended for

██████████████ . ████████████████████████

████████████████████████████████████████

### iv.   On January 16, 2026, Subject 5 Picked Up the Narcotics Package

214.   On January 16, 2026, at approximately 11:06 a.m., a USPS inspector, acting in an undercover capacity, delivered the Second 40 Pleasant Street Package.  At approximately 11:09 a.m., investigators observed Subject 5 come down from the area of Apartment 2L, grab the package, and bring it back to the area from where Subject 5 came.

215.   On January 16, 2026, at approximately 12:14 p.m., MARTINEZ MENDEZ, using Target Telephone 5, received an incoming call from ████████████████ on the ████████████-9812 Phone (Session 3467).  During the call, MARTINEZ MENDEZ and ████████████████ discussed the payment owed to RIVERA RODRIGUEZ for the successful use of Subject 5's address.  MARTINEZ MENDEZ stated, "We have to pay him."

### u.   In January and February 2026, SAEZ Coordinated a Drug Transaction with HERRING, MENDEZ, and BANDILLA

### i.   On January 29, 2026, SAEZ Agreed to Send MENDEZ to Sell Narcotics to BANDILLA

216.   On January 29, 2026, at approximately 9:53 a.m., SAEZ, using Target Telephone 1, received an incoming call from BANDILLA at the BANDILLA-3235 Phone (Session 2019).  During the call, SAEZ told BANDILLA that MENDEZ, SAEZ's girlfriend, was waiting for a narcotics delivery and that BANDILLA could get his usual order of narcotics from MENDEZ when the delivery arrives.  SAEZ said, "I'm in Puerto Rico right now . . . I got wifey out there, though.  If you need anything I'll have her go see you."  BANDILLA responded that he wanted,

"two things that I normally get, 50 and then uh . . . 28." As discussed above, and based on my training and experience, I believe that BANDILLA was once again ordering two types of narcotics, 50 grams of one and 28 grams of the other. SAEZ responded, "Yeah, I got you . . . I got her waiting for something right now. Right when she got that, I'll have get go see you." Based on training and experience, and the information above, I believe that SAEZ agreed to sell BANDILLA narcotics through MENDEZ, and that when SAEZ said, "I got her waiting for something right now," SAEZ was referring to MENDEZ waiting for a narcotics delivery.

ii.    On February 2, 2026, SAEZ Confirmed that MENDEZ Would Provide BANDILLA with Cocaine

217.    On February 2, 2026, at approximately 3:23 p.m., SAEZ, using Target Telephone 1, made an outgoing call to BANDILLA on the BANDILLA III-3235 Phone (Session 2100). During the call, SAEZ told BANDILLA that he was still out of town but that he could "get [BANDILLA] with the white girl, but the other shit, you'll have to wait till I get back. She don't got access to it." I believe that when SAEZ said, "I could get you with the white girl," he was referring to getting BANDILLA cocaine. I further believe that when SAEZ said, "[T]he other shit…she don't got access to it," he was referring to fentanyl or methamphetamine, to which MENDEZ does not have access.

iii.    On February 3, 2026, HERRING Helped MENDEZ Break Open a Kilogram of Narcotics at SAEZ's Direction

218.    On Monday, February 2, 2026, at 9:24 p.m., SAEZ, using Target Telephone 1, received an incoming call from HERRING, using the HERRING-5070 Phone (Session 2110). Towards the end of the conversation, SAEZ asked HERRING to "meet her over there so you can break it up." HERRING replied, "Alright. Say less." As described below, based on the context of

78

the conversation and subsequent interceptions, I believe that "her" refers to MENDEZ and "break it up" refers to breaking up a cocaine brick.

219. The following day, on February 3, 2026, at approximately 12:06 p.m., SAEZ, using Target Telephone 1, received an incoming call from BANDILLA on the BANDILLA-3235 Phone (Session 2128). During the call, SAEZ told BANDILLA, "I got you today. I got somebody breaking it, 'cause she didn't wanna break it. . . . I'm just waiting for my man to call me . . . so she can meet up with him, so he can do it." Based on my training and experience, I believe that SAEZ asked HERRING ("my man") to break open the narcotics kilogram because MENDEZ "didn't wanna break it." I further believe that the purpose of breaking open the kilogram was to chip off a smaller quantity for BANDILLA.

220. At approximately 12:34 p.m., investigators observed MENDEZ drive into the rear parking lot of 62-64 Auburn Street in Auburn, Massachusetts. At approximately 12:38 p.m., SAEZ used Target Telephone 1 to call MENDEZ (Session 2129). During the brief conversation, MENDEZ stated, "I'm already here."

221. Approximately one minute later, at approximately 12:39 p.m., SAEZ used Target Telephone 1 to call HERRING at the HERRING-5070 Phone. HERRING stated, "She's been there already? A'ight so I'll go over there." At approximately 1:08 p.m., investigators observed HERRING drive into the rear parking lot of 62-64 Auburn Avenue, like MENDEZ. Based on my training and experience and the timing of the calls, I believe that HERRING met with MENDEZ to break open the kilogram of narcotics.

222. At approximately 6:22 p.m., SAEZ, using Target Telephone 1, received a call from BANDILLA on the BANDILLA-3235 Phone. BANDILLA stated, "Your kid was trying to jump out of the car and go into the house . . . Your wife, my wife was there and she was like, 'No, no,

we gotta go!'" Based on training and experience and the information above, I believe that MENDEZ stopped by BANDILLA's house with SAEZ and MENDEZ's child to deliver the cocaine.

> **v. In February 2026, RIVERA RODRIGUEZ and MARTINEZ MENDEZ Shipped Two Kilograms of Cocaine to Drop Addresses in Worcester County Used by the SAEZ DTO**

223. On February 4, 2026, investigators in Puerto Rico seized two suspected drug packages that were inbound from Puerto Rico to known drop addresses used by the SAEZ DTO. The two packages are identified as follows:

   a. The Third 40 Pleasant Street Package. USPS Priority Mail, tracking # 9505 5114 5582 6035 7562 13, mailed on February 4, 2026, weighing 6 pounds, 5 ounces, with handwritten label and addressed to "Javier Santiago, 40 Pleasant St APT #2L Webster MA 01570" with a return address of "Luis Santiago Parc 77 Calle los vaqueros Toa baja P.R. 00949." I refer to this package as the "Third 40 Pleasant Street Package."

   b. The First 211 Charlestown Meadow Drive Package. USPS Priority Mail package, tracking # 9505 5114 5582 6035 7564 11, mailed on February 4, 2026, weighing 7 pounds, 13 ounces, with handwritten label addressed to "Chas Rivera, 211 Charlestown Meadows, Westborough MA # 01581" with a return address of "Juan Rivera, 78 Calle los Vaqueros, Toa Baja, P.R. # 00949." I refer to this package as the "First 211 Charlestown Meadow Drive Package."

224. Based on my training and experience, the fact that each of these packages originated in Puerto Rico, had handwritten sender and addressee information, was similar in size to other intercepted drug packages, and had postage paid for in cash, and was destined to known drop addresses used by the SAEZ DTO, investigators believed that each of these packages contained narcotics. [16]

---

[16] On December 2, 2025, investigators intercepted RIVERA RODRIGUEZ over Target Telephone 3 (Session 489). During the call, investigators learned that RIVERA RODRIGUEZ was moving to 211 Charlestown Meadows Drive, Westborough, Massachusetts. Based on this information, and the conversations described above about the scarcity of drop addresses, I believe that the DTO was using this new address as a drop address.

80

### i. The Third 40 Pleasant Street Package

225.    Investigators in Massachusetts obtained the Third 40 Pleasant Street Package on February 17, 2025.  On February 19, 2026, United States Magistrate Judge M. Page Kelley, for the District of Massachusetts, issued a warrant authorizing the search of the package.  Inside the package, investigators found one brick-shaped object wrapped further in clear plastic, tape, dryer sheets, carbon paper, and black latex, with an exterior marking of a picture of President Donald J. Trump and the letters "FAFO," concealed inside a blue "Sequence" game box inside the USPS package.  Under the wrapping, investigators found a solid white powdery substance stamped "FAFO," weighing 1092.5 gross grams.  The substance field tested positive for the presence of cocaine.  Investigators submitted the substance to the DEA laboratory for testing and that testing is pending.

226.    Based on training and experience, the positive field test, the appearance of the substance, and the multiple packages of cocaine seized from the SAEZ DTO, which look similar to the Third 40 Pleasant Street Package, I believe the Third 40 Pleasant Street Package contained approximately one kilogram of cocaine.

227.    Surveillance footage for the Toa Baja Post Office in Puerto Rico shows that RIVERA RODRIGUEZ shipped the Third 40 Pleasant Street Package.

### ii. The First 211 Charlestown Meadow Drive Package

229.    On February 11, 2026, the USPIS San Juan office obtained a warrant to search the First 211 Charlestown Meadow Drive Package.  Inside the package, investigators found one brick-shaped object, suspected of being a kilogram of cocaine.  The USPIS San Juan office maintained

81

complete care and custody of the package, including its contents, until February 18, 2026, when it was mailed to investigators in Massachusetts.

230. On March 2, 2026, investigators in Massachusetts seized from the package a brick-shaped object of a solid white powdery substance, weighing 1015 gross grams, which field tested positive for the presence of cocaine. Like the Third 40 Pleasant Street Package, the wrapping of this package included a blue "Sequence" game box and a picture of President Trump and the letters "FAFO."

231. Based on training and experience, the field test, the appearance of the substance, and the multiple packages of cocaine seized from the SAEZ DTO, which look similar to the First 211 Charlestown Meadow Drive package, I believe the First 211 Charlestown Meadow Drive Package contained approximately one kilogram of cocaine.

232. Surveillance footage for the Toa Baja Post Office in Puerto Rico shows that an unknown Hispanic male shipped the First 211 Charlestown Meadow Drive Package. Based on the significant similarities in the packaging of the Third 40 Pleasant Street Package and the First 211 Charlestown Meadow Drive Package, the timing of the shipments, the fact that RIVERA RODRIGUEZ shipped the 40 Pleasant Street package, the fact that RIVERA RODRIGUEZ has previously asked others to ship packages on his behalf, and the fact both packages were destined for SAEZ DTO addresses, including RIVERA RODRIGUEZ's new address, I believe that the packages shared a common source and that RIVERA RODRIGUEZ was likely involved in the shipment of both packages.

233. After the USPIS San Juan Office seized the packages described above, on February 13, 2026, at approximately 1:38 p.m., MARTINEZ MENDEZ used Target Telephone 5 to call an unidentified male at (787) 533-8740 (hereinafter, "UM-8740") (Session 7388). During the call,

MARTINEZ MENDEZ and UM-8740 discussed how MARTINEZ MENDEZ lost two kilos of narcotics in the mail.  Specifically, MARTINEZ MENDEZ stated, "I had two kilos there.  I lost both."  A few minutes later, at approximately 1:43 p.m., MARTINEZ MENDEZ used Target Telephone 5 to call UM-8740 again (Session 7397).  During the call, MARTINEZ MENDEZ explained that he was "the only one tracking where they go" and that he "know[s] this was a loss."

234.    Based on my training and experience, I believe when MARTINEZ MENDEZ said, "no one has the tracking numbers only me," he was referring to the tracking numbers for drug packages.  Based on the context of the conversation, UM-8740 was questioning whether the drug packages were actually lost, and MARTINEZ MENDEZ affirmed that he is the only one who has the ability to query the status of the packages on the USPS tracking feature.  Based on this information and my training and experience, I believe that MARTINEZ MENDEZ was also involved in the shipment of both packages of cocaine.

### w.  On February 8, 2026, SAEZ Distributed Methamphetamine to BANDILLA

235.    On February 8, 2026, at approximately 12:27 p.m., SAEZ used Target Telephone 1 to talk to BANDILLA (Session 2215).  During the call, BANDILLA stated, "I need that fucking uh, the glass."  SAEZ responded, "You want me to go see you today?"  BANDILLA responded, "Yeah, if you can!"  SAEZ added that he would also "pick up the money" from BANDILLA.

236.    Based on my training and experience, I believe that when BANDILLA said, "I need…that glass," he was using a common street name for methamphetamine.  Further, I believe that the "money" SAEZ intended to pick up from BANDILLA were drug proceeds from SAEZ's multiple prior deliveries to BANDILLA.

237.    At approximately 3:54 p.m., SAEZ, using Target Telephone 1, made an outgoing call to BANDILLA (Session 2227).  During the call, SAEZ asked if BANDILLA was home.

BANDILLA stated he was and SAEZ replied that he would be there in 15 minutes.  At approximately 4:15 p.m., SAEZ, using Target Telephone 1, made an outgoing call to BANDILLA.  SAEZ stated, "open the door."

238.   Based on training and experience, prior interactions between SAEZ and BANDILLA, and the context of the conversations described above, I believe that SAEZ delivered methamphetamine to BANDILLA at BANDILLA's residence.

**x.   On February 17, 2026, TORRES Agreed to Broker Another Drug Transaction for MARTINEZ MENDEZ and ▮▮▮▮▮▮▮▮▮▮▮▮**

239.   On February 17, 2026, at approximately 12:41 p.m., MARTINEZ MENDEZ, using Target Telephone 5, made an outgoing call to ▮▮▮▮▮▮▮▮▮▮▮ on the ▮▮▮▮▮▮ ▮▮▮▮▮▮-9812 Phone (Session 7966).  During the call, ▮▮▮▮▮▮▮▮▮▮▮ asked MARTINEZ MENDEZ for "work" and MARTINEZ MENDEZ replied, "Sure."  ▮▮▮▮▮ ▮▮▮▮▮ then asked MARTINEZ MENDEZ if he knew "at how much," and MARTINEZ MENDEZ responded that he did not know.  Based on training and experience and the context of the conversation, I believe that "work" referred to pooling their money together to purchase narcotics, and that ▮▮▮▮▮▮▮▮▮▮ wanted to know how much the narcotics cost.

240.   Later that day, at approximately 3:30 p.m., MARTINEZ MENDEZ, using Target Telephone 5, made an outgoing call to TORRES on Target Telephone 7 (Session 8003).  During the call, MARTINEZ MENDEZ told TORRES that "a buddy" of his had asked "for work."  TORRES responded, "Let me call to see if they are going for the same price."  Based on training and experience, I believe that TORRES was referring to calling his supplier to see what the price of the narcotics is per kilogram.

**y. On March 2, 2026, Investigators Seized Narcotics from TORRES that Were Destined for MARTINEZ MENDEZ and Arrested TORRES**

241.    TORRES traveled to California on February 25, 2026.  On March 1, 2026, he flew to Puerto Rico.  Investigators set up surveillance at the Luis Munoz Marin International Airport in Puerto Rico in anticipation of TORRES' arrival.

242.    At approximately 5:49 p.m., investigators observed TORRES' black Toyota Tacoma.  At approximately 6:11 p.m., investigators also observed a grey Toyota Tacoma, which investigators had seen during surveillance before.

243.    At approximately 6:23 p.m., TORRES was observed standing near baggage claim with two roller suitcases, one brown/navy and one silver/gray.  A few minutes later, investigators saw TORRES standing with two individuals known to the government.  At approximately 6:40 p.m., TORRES and the two individuals walked toward the airport exit, TORRES with a red suitcase, and the other two individuals carrying the brown/navy and silver/gray suitcases. TORRES got into his black Toyota Tacoma, while the other two individuals got in the grey Toyota Tacoma described above.

244.    Investigators conducted traffic stops of each Toyota Tacoma and obtained warrants to search each vehicle.  In the black Toyota Tacoma, investigators found the red suitcase TORRES picked up at baggage claim, which contained approximately 31 pounds of marijuana.  In the grey Toyota Tacoma, investigators found the silver/gray suitcase TORRES also picked up at baggage claim, which contained approximately 21 pounds of marijuana.  TORRES and others were placed under arrest on narcotics charges.[17]

---

[17] The charges were subsequently dismissed.

245.     On March 4, 2026, at approximately 2:37 p.m., MARTINEZ MENDEZ, using Target Telephone 5, made an outgoing call to an unidentified male at (939)-202-1621 (hereinafter, "UM-1621") (Session 8613).  During the call, MARTINEZ MENDEZ told UM-1621 that his and TORRES's drugs were seized at the airport, as described above.  MARTINEZ MENDEZ said, "Dude, they had 2 suitcases.  One was mine and the other was Manco's.  They gave them to Manco at the airport, and they caught both of them."  Investigators believe when MARTINEZ MENDEZ referred to "Manco" he was talking about one of TORRES' associates, who was arrested on March 1, 2026.  Investigators further believe that when MARTINEZ MENDEZ stated, "one was mine and the other one was Manco's," he was affirming that one of the suitcases (and the marijuana inside) belonged to him, and that the other one belonged to TORRES' associate, Manco.  When MARTINEZ MENDEZ stated, "they caught both of them," he was referring to investigators placing TORRES and Manco under arrest after finding marijuana in their suitcases.

246.     The following day, on March 5, 2026, MARTINEZ MENDEZ, using Target Telephone 5, received an incoming call from an unidentified male on phone number (787)-516-2400 ("UM-2400") (Session 8743).  During the call, MARTINEZ MENDEZ stated that several pounds of the marijuana seized from TORRES and Manco, described above, belonged to him. Specifically, UM-2400 said that "they locked up . . . Shaco."  Investigators believe that "Shaco" refers to TORRES, whose first name is Shaquille.  MARTINEZ MENDEZ responded, "The truth is that it hit me very hard because all of it is mine . . . 21 pounds."  He added, "15,000 pesos I invested, because it's a big turnaround."  Investigators further believe when MARTINEZ MENDEZ stated, "all of it is mine," he was admitting that he owned "21 pounds" of the marijuana that was seized from TORRES and Manco at the airport.  When MARTINEZ MENDEZ stated,

86

"15,000 pesos I invested," he was telling UM-2400 that he paid $15,000 for the marijuana, which was lost due to the seizure.

z. **On March 13, 2025, BANDILLA Was Arrested on State Drug and Firearm Charges**

247.    On March 13, 2026, investigators observed BANDILLA and SAEZ meet outside of 109 Dunnbrook Road in East Brookfield, Massachusetts.  Specifically, at approximately 4:01 p.m., BANDILLA arrived at 109 Dunnbrook Road.  At approximately 4:40 p.m., SAEZ parked in front of that address.  At 4:51 p.m., SAEZ, using Target Telephone 1 received a call from BANDILLA (Session 2639). BANDILLA told SAEZ that he could see him sitting in his vehicle and told him to come in.  SAEZ stated he was not going inside, but then investigators observed SAEZ exit his vehicle and enter 109 Dunnbrook Road.  At approximately 4:57 p.m., investigators observed SAEZ and BANDILLA exit the residence and proceed with their interaction in the driveway of 109 Dunnbrook Road.  Investigators then observed BANDILLA hand SAEZ an amount of U.S. Currency. After a short period of time, SAEZ returned to his vehicle and left the area, and BANDILLA went into his residence.  Based on training and experience and the information above, I believe that BANDILLA paid SAEZ narcotics proceeds during this brief interaction.

248.    At approximately 8:55 p.m., investigators executed a state search warrant at 109 Dunnbrook Road.  During the search, investigators found $40,000 in U.S. currency and suspected narcotics including (i) 4 knotted plastic bags containing white powder, suspected to be cocaine, weighing in total approximately 13 grams; (ii) an orange plastic bottle containing 70 white round pills (with markings "712"), suspected to be Oxycodone, weighing approximately 85 grams; (iii) 84 buprenorphine/naloxone strips, weighing approximately 117 grams; (iv) a knotted plastic bag containing white powder, suspected to be cocaine, weighing approximately 88 grams; (v) 5 white

87

oblong pills (with markings "IP 109"), suspected to be Hydrocodone, weighing approximately 59 grams; (vi) 31 white round pills (with markings "30 RP"), suspected to be Oxycodone, weighing approximately 52 grams; and (vii) two plastic bottles containing white powder, believed to be used as a cutting agent, weighing approximately 349 grams.

249.    Investigators also found numerous firearms, including (i) a Marlin .22 bolt action rifle (26EAT-26-PR), serial #97694509; (ii) a Rohm .22 revolver with white hand guards (26EAT 25-PR), serial #769001; (iii) a Mauser 7.65 pistol with wood grips and one magazine (26EAT- 24-PR), serial #351195; (iv) a Cobra pistol with black grips, one magazine (26EAT-23-PR), serial #FS094397; (v) a Polymer 80 9mm pistol and two magazines (26EAT-22-PR), without a serial number.  They also found firearm accessories and ammunition.

250.    BANDILLA was arrested on state firearms and narcotics charges in the Western Worcester District Court.

251.    On March 14, 2026, SAEZ, using Target Telephone 2, received an incoming call from an individual known to the government ("Subject 7") (Session 2079).  During the call, SAEZ and Subject 7 discussed the arrest of BANDILLA and his suspicion that law enforcement would raid his properties.  Specifically, during the call, SAEZ said, "I think they're going to raid me and everything."  He then added, "I'm going to delete my Facebook and everything right now."

### C. The Target Subjects' Commission of the Charged Offense

252.    In summary, the foregoing paragraphs establish that from on or about October 26, 2024, through March 14, 2026, the Target Subjects, with each other and with others known and unknown, purchased, shipped, and received numerous cocaine and suspected cocaine packages from Puerto Rico to Massachusetts, purchased and shipped marijuana, and sold cocaine, crack

cocaine, methamphetamine, and fentanyl to others.  I summarize each Target Subjects' roles and relevant background below.

253.     Jack SAEZ, one of the leaders of the SAEZ DTO, coordinated and participated in the delivery, tracking, receipt, and/or storage of multiple cocaine and suspected cocaine packages, including the First 3 Draper Street Package, the First 19 Auburn Street Package, the First 3 Richard Avenue Package, the First 69 Outlook Drive Package, the First 38 Canterbury Street Package, the Fourth 3 Draper Street Package, the First 413 Charlestown Meadows Drive Package, the First 36 Fairfield Street Package, the Fifth 3 Draper Street Package, the Second 36 Fairfield Street Package, the Fifth 19 Auburn Street Package.  SAEZ also delivered crack cocaine and methamphetamine, among other narcotics, to OCASIO and BANDILLA, respectively, for OCASIO and BANDILLA to distribute to their customers.  Finally, SAEZ assisted MARTINEZ MENDEZ in obtaining a drop address for MARTIENZ MENDEZ to send another narcotics package from Puerto Rico to Massachusetts.  SAEZ has multiple arrests for drug related offenses, including possession with intent to distribute a Class D Substance in 2012, and possession of a Class B Substance in 2018. Both charges were dismissed.

254.     Christopher RIVERA RODRIGUEZ, one of the leaders of the SAEZ DTO, coordinated and participated in the shipment, tracking, delivery, receipt, and/or storage of multiple cocaine and suspected cocaine packages, including the Third 3 Draper Street Package, the Fourth 3 Draper Street Package, the Fifth 3 Draper Street Package, the Sixth 3 Draper Street Package, the Seventh 3 Draper Street Package, the Fourth 19 Auburn Street Package, the First 36 Fairfield Street Package, the First 413 Charlestown Street Package, the First 38 Canterbury Street Package, the Second 69 Outlook Drive Package, the Third 40 Pleasant Street Package, and the First 211 Charlestown Meadows Drive Package.  RIVERA RODRIGUEZ recruited others, including

89

HERNANDEZ RIOS, ███████████, and Subject 5 to ship and receive packages on his behalf to limit his exposure to law enforcement detection, and assisted MARTINEZ MENDEZ in obtaining a drop address for MARTINEZ MENDEZ to ship additional narcotics packages.

255.    Jan Carlos MARTINEZ MENDEZ, one of the leaders of the SAEZ DTO, coordinated and participated in the shipment, tracking, delivery, receipt and/or storage of multiple cocaine and suspected cocaine packages, including the Second 19 Auburn Street Package, the Fourth 19 Auburn Street Package, the First 36 Fairfield Street Package, the First 413 Charlestown Meadows Drive Package; the First 38 Canterbury Street Package, the Fourth 3 Draper Street Package, the Seventh 3 Draper Street Package, the Third 40 Pleasant Street Package, and the First 211 Charlestown Meadows Drive Package.  MARTINEZ MENDEZ also worked with TORRES and ███████████ to obtain a new supplier of cocaine and marijuana for the SAEZ DTO.

256.    Dayanara MENDEZ, SAEZ's girlfriend, received and transported multiple narcotics packages and assisted SAEZ in SAEZ's distribution of narcotics.  MENDEZ received and transported the First 69 Outlook Drive Package and the Second 69 Outlook Drive Packages to deliver them to SAEZ.  MENDEZ also drove SAEZ to deliver narcotics to HERRING and BANDILLA.  Finally, MENDEZ worked with HERRING to break a kilogram of cocaine and to deliver cocaine to BANDILLA on SAEZ's behalf when SAEZ was in Puerto Rico.

257.    Shaquille De Jesus TORRES is a broker who worked with MARTINEZ MENDEZ to obtain a new cocaine supplier for the SAEZ DTO.  TORRES agreed to broker transactions between MARTINEZ MENDEZ and new suppliers and met with a new supplier to negotiate narcotics prices on MARTINEZ MENDEZ's behalf.  On March 1, 2026, TORRES was arrested

in Puerto Rico after investigators seized 50 pounds of marijuana from TORRES and his associates, part of which was paid for by MARTINEZ MENDEZ.

258. ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███    ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████    ████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

259. Sheldon HERRING is a drug distributor for the SAEZ DTO. SAEZ shared information with HERRING about SAEZ and RIVERA RODRIGUEZ's receipt of a cocaine shipment because HERRING deals narcotics for SAEZ. On SAEZ's behalf, HERRING broke a kilogram of cocaine for MENDEZ in order for MENDEZ to deliver narcotics to BANDILLA when SAEZ was in Puerto Rico. In 2024, HERRING was convicted of possession with intent to distribute cocaine and sentenced to two and a half years' imprisonment.

260. Duamel OCASIO, a drug distributor for the SAEZ DTO, coordinated and participated in the tracking, delivery, receipt and/or storage of multiple cocaine and suspected

cocaine packages, including the First 19 Auburn Street Package, the Second 19 Auburn Street Package, the Third 19 Auburn Street Package, the Fifth 19 Auburn Street Package, and the Second 36 Fairfield Street Package. OCASIO obtained fentanyl and crack cocaine from SAEZ to distribute to OCASIO's customers. On December 4, 2025, OCASIO was arrested on state narcotics charges. OCASIO's vehicle contained approximately 17.4 grams of suspected fentanyl and approximately 11.7 grams of suspected cocaine. In 1997, OCASIO was convicted of armed assault and sentenced to three to five years in prison. In 2006, OCASIO was convicted of possession with intent to distribute cocaine and sentenced to three to four years in prison. In 2011, OCASIO was convicted of possession with intent to distribute a Class B controlled substance and sentenced to six months in prison. In 2016, OCASIO was convicted of manslaughter and sentenced to four to six years in prison.

261.    Stephen BANDILLA III is a drug distributor for the SAEZ DTO. On at least five occasions, BANDILLA purchased methamphetamine ("glass") from SAEZ to distribute to BANDILLA's customers. When SAEZ was in Puerto Rico, BANDILLA coordinated the purchase of cocaine with SAEZ and MENDEZ to distribute to BANDILLA's customers. On March 13, 2026, BANDILLA paid SAEZ drug proceeds. Investigators subsequently arrested BANDILLA and searched his residence, which contained numerous narcotics, firearms, and large quantities of U.S. currency. In 2008, BANDILLA was convicted of assault to murder, assault and battery, and arson. BANDILLA received a two and a half year suspended sentence and probation. In 2012, BANDILLA was convicted of assault and battery and was sentenced to probation. In 2019, BANDILLA was convicted of possession of a Class D Substance.

262.    Justin GILCHREST received narcotics packages for the SAEZ DTO. Specifically, GILCHREST received the First 3 Richard Avenue Package and the Second 3 Richard Avenue

Package and transferred them to SAEZ at 32 Ash Street.  GILCHREST also received the Third 3

Richard Avenue Package.  On his way to deliver that package at Ash Street, GILCHREST noticed

investigators' drone, aborted his trip to Ash Street, and conducted countersurveillance. In 2017,

GILCHREST was charged with resisting arrest, possession of a Class C Controlled Substance,

disorderly conduct, destruction of property, larceny, and conspiracy.  These charges were

dismissed.

263.

264.    Ushuaniliz HERNANDEZ RIOS, is a shipper for the SAEZ DTO.  HERNANDEZ

RIOS personally shipped the Sixth Draper Street Package, the Seventh Draper Street Package, and

the First 6 Wachusett Street Package on RIVERA RODRIGUEZ's behalf.

## CONCLUSION

265.    Accordingly, I have probable cause to believe that beginning at least from in or about October 2024, through present, the Target Subjects conspired with each other and others known and unknown, to knowingly and intentionally possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846.

Respectfully submitted,

/s/ Patrick L. Kelly

_____

Patrick L. Kelly, Special Agent
Drug Enforcement Administration

Sworn to telephonically in accordance with Federal Rule of Criminal Procedure

4.1 on April __3__, 2026.

_____

Hon. M. Page Kelley
United States Magistrate Judge